**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES OF AMERICA,

v.                                                    1:10-cr-310-WSD

ANDREW S. MACKEY,

                            Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Andrew S. Mackey's

("Defendant" or "Mackey") Motion for New Trial [152].  Also before the Court is

Mackey's *pro se* Amended Motion for New Trial [165].[1]

## I.     BACKGROUND

On May 16, 2012, a jury convicted Mackey of conspiracy to commit wire

fraud (Count 1), five counts of wire fraud (Counts 2-4, 6 and 8), and eight counts

of mail fraud (Counts 9-17), in connection with investments offered through

Mackey's company, A.S.M. Financial Funding Corporation ("ASM").[2]  [143].

---

[1]  Mackey filed *pro se* a document entitled "Amendment Reply to Government's
Opposition Motion for a New Trial," which raises additional grounds for new trial.
Although not properly before the Court, see LCrR 57.1D(3), ND Ga., the Court
will address Mackey's additional arguments.
[2]  The jury found Mackey not guilty of one count of wire fraud (Count 5) and one
count of mail fraud (Count 7).

Mackey contends that he is entitled to a new trial because: (1) admission of evidence relating to the memorandum prepared by attorney Robert Townsend ("Townsend Memo") violated Mackey's attorney-client privilege; (2) the Court impermissibly limited the scope of Mackey's cross-examination of investor-witnesses, thereby violating Mackey's Fifth and Sixth Amendment right of confrontation, right to cross-examination, right to present a defense and due process rights; and (3) the Court's refusal to instruct the jury on Mackey's requested "Theory of the Defense" violated Mackey's right to present a defense. The Townsend Memo and Joint Venture Agreements were the subject of pre-trial evidentiary motions that were briefed, argued and considered by the Court. See [97]; [101]; [103]; [112]; [114].

1.    *The Townsend Memo*

In February 2009, in response to requests for information in civil fraud proceedings brought against Mackey and ASM by the New York Attorney General's Office ("NYAGO"), Mackey voluntarily produced to the NYAGO several computer hard drives that he had used in connection with his investment business. One of the hard drives that Mackey produced contained a June 29, 2005, memo from attorney Robert Townsend. In the memo, Townsend discusses representations made by Mackey on his business's website and provides opinions

about the legality of Mackey's business. When Mackey produced the hard drives, neither he nor his attorney in those proceedings asserted that the Townsend Memo was privileged or confidential, and neither he nor his attorney objected to the production of the Townsend Memo to the NYAGO.

In 2011, the NYAGO transferred the hard drives to the FBI's Atlanta field office. The Government moved for an order in this case declaring that certain communications, including the Townsend Memo, were not protected by the attorney-client privilege because the communications were disclosed to third parties. Mackey argued that he did not knowingly waive the privilege when he turned over the hard drives to the NYAGO and that any purported waiver in the civil proceeding should not apply to the memorandum in this criminal case. The Court found that Mackey had waived the attorney-client privilege with respect to the Townsend Memo, and that the memorandum could be admitted in the Government's case-in-chief for the limited purpose of showing whether Mackey possessed the necessary intent to defraud investors. [112].

Additional testimony was offered about the Townsend Memo at trial. Inconsistent with Mackey's pre-trial representation about the memorandum and whether an attorney-client privilege extended to it, during the second day of his testimony at trial Mackey disclosed that some person in his network, other than

himself, had asked Townsend to review the representations made by Mackey to the public. Mackey testified that he did not request Townsend's opinion and did not communicate with Townsend to obtain legal advice.

2. *The Joint Venture Agreement*

When investing with ASM, investors executed a Joint Venture Agreement ("JVA"), which purported to advise that the investment being made was risky, that "no specific returns or guarantees of success, profit, or safety [were] . . . stated or implied," that any earnings from the investment were on a "best efforts basis," and that the managing partner of the joint venture had the right to "change the earnings schedule as required to reflect fluctuations in the economy," the right of "sale and exclusive ownership of the Venture Partner's Assets" with authority to "engage in any financial transactions, disbursements, and/or investments to accomplish the successful resolution" of the joint venture, and was otherwise "empowered to engage in all transactions necessary to conduct the affairs to [sic] the parent business venture" without being required to provide accounting or reporting to investors. The JVA also provided:

> RISK: Risk is an integral part of any business
> opportunity, as the probability of loss proportionally
> influences the likely level of return. The
> unpredictable nature of the International financial
> markets, coupled with the acts of God and other
> unpredictable events, combine to make all business

> ventures (including those which form the basis of this
> Joint Venture Agreement) susceptible to an element of
> risk. Every effort will be made to reduce the
> probability of loss to an acceptable level and
> guarantee the value of the principal and the yield.
> However, the payment of profits and Asset is on a
> best effort basis.

[71 at 3-4]. The Government moved to preclude admission of the JVA and

evidence that Mackey used his "best efforts" to invest the funds given to him by

investors. Mackey opposed the motion and argued that his disclosure of risk and

efforts to find high-return investments showed that he did not intend to defraud

investors. The Court found that the provisions of the JVA were relevant to intent

and could be introduced at trial. The Court further found that what investors

believed about the investment was not relevant and prohibited cross-examination

of investor-witnesses regarding their understanding of provisions of the JVA. The

Court found that "what a particular investor thought is not relevant to whether

[Mackey] engaged in a fraudulent scheme." [112 at 8].[3]

---

[3] There is significant authority in our circuit to support that investors' beliefs and
understanding of an investment is not relevant to whether a defendant intended to
defraud investors. See, e.g., United States v. Goff, 400 F. App'x 507, 510
(11th Cir. 2010) (per curium) (rejecting defendant's argument that he could not
have intended to defraud victim-company because their agreement arguably
allowed defendant to withhold payments and company knew defendant was
withholding payments but did nothing); United States v. Svete, 556 F.3d 1157,
1166 (11th Cir. 2009); United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir.
2009) ; United States v. Gray, 367 F.3d 1263, 1269 (11th Cir. 2004) ("[a]ll that the

## II.    DISCUSSION

### A.    Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that a court, on motion by the defendant, may vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a); see also United States v. Pedrick, 181 F.3d 1264, 1266-67 (11th Cir. 1999); United States v. Wilson, 894 F.2d 1245, 1252 (11th Cir. 1990).  "A motion for a new trial is addressed to the sound discretion of the trial court."  United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).  Courts should grant motions for new trials sparingly, with caution, and only in those "really exceptional cases."  Id. at 1313.

### B.    Admission of the Townsend Memo

Mackey argues that admission of the Townsend Memo violated the attorney-client privilege.[4]  Based on Mackey's testimony at trial, the record now is

---

Government needs to show to establish the *mens rea* element of the offense is that the defendant anticipated the intended victim's reliance"); Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991) ("[T]he government can convict a person for mail or wire fraud even if his targeted victim never encountered the deception – or, if he encountered it, was not deceived.").

[4]  Mackey asserts that admission of the Townsend Memo violated his Sixth Amendment right to counsel but does not now, as he has not in the past, develop the argument beyond the mere assertion of it.  The Court has already considered and rejected this argument.  [112 at 15 n.2] ("there is no basis to conclude that the right to effective assistance of counsel during a criminal proceeding extends to a right to have counsel in non-criminal proceedings structure their client's affairs so

that Mackey did not engage in any attorney-client communications with Mr.

Townsend because Mackey did not request the review discussed in the Townsend

Memo.  The review was requested by someone other than Mackey and apparently

then provided to Mackey.  Thus, there is no evidence that the Townsend Memo is

protected by any privilege that Mackey can assert.

Assuming there is a privilege, Mackey contends that he did not waive it, and

if he did, his waiver was inadvertent.[5]  [152 at 8].  The Government argues that

Mackey's failure to assert the attorney-client privilege at the time he provided the

New York Attorney General's Office with the computer hard drive containing the

Townsend Memo constitutes a valid waiver.  [158 at 2].

The Eleventh Circuit has consistently held:

"[A]t the point where attorney-client communications are no longer

---

that probative evidence may be shielded from admissibility in later criminal
proceedings").

[5]  Mackey also reasserts his argument that, in the alternative, his waiver was
effective only as to the NYAGO proceeding.  [152 at 8].  The Court rejected this
argument in connection with Mackey's oral motion for reconsideration, finding
that "[e]ven if the selective waiver doctrine was a viable doctrine in this circuit, the
facts here do not support that the doctrine would apply, especially considering that
no representations were made to Mackey that any information produced would be
kept confidential."  Order (by docket entry), Feb. 9, 2012.  It is axiomatic that "at
the point where attorney-client communications are no longer confidential, i.e.,
where there has been a disclosure of a privileged community, there is no
justification for retaining the privilege."  United States v. Suarez, 820 F.2d 1158,
1160 (11th Cir. 1987).  Mackey fails to present any evidence that he waived
privilege for the purposes of the NYAGO proceeding only.

> confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege. For that reason, it has long been held that once waived, the attorney-client privilege cannot be reasserted.

United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987) (internal citations omitted).  Federal Rule of Evidence 502(b)[6] provides that inadvertent disclosure of privileged communications does not waive the attorney-client privilege if the proponent of the privilege satisfies three requirements: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . . ."  Mackey has the burden to prove that all three requirements are satisfied.  See Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) ("The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential," quoting United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991)); In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 407, 417 (N.D. Ill. 2006) ("Generally, the burden of proving inadvertent disclosure is on the party asserting the privilege.").

---

[6]  Federal Rule of Evidence 502(c)(1) provides that a disclosure made in a state proceeding does not operate as a waiver of the attorney-client privilege in a federal proceeding if the disclosure would not be considered a waiver under the Federal Rules of Evidence if the disclosure had been made in a federal proceeding.

Whether the Townsend Memo is protected by attorney-client privilege has been the subject of lengthy briefing and discussion prior to, and during, trial. In its February 7, 2012, Order, the Court found that the Townsend Memo is no longer confidential (if it ever was), has not been confidential since Mackey provided his computer hard drives to the NYAGO in February 2009, and was not confidential when the hard drives were provided to the Government, with the knowledge of Mackey's defense counsel, in May 2011. [112 at 11]. The Court found that Mackey failed to show that disclosure of the Townsend Memo was inadvertent, including because Mackey had not shown that he, or his attorney in the NYAGO proceeding, took reasonable steps to prevent disclosure of the Townsend Memo.

That Mackey asserts again that he retained counsel in the NYAGO proceeding does not change that he and his counsel failed to take any steps, reasonable or otherwise, to prevent disclosure of the Townsend Memo. The evidence is that Mackey voluntarily provided to the NYAGO several computer hard drives he used in connection with ASM; that Mackey did not disclose to the NYAGO that the Townsend Memo was on the hard drive; and that neither Mackey, nor his attorney, asserted that the Townsend Memo was privileged or confidential. Simply retaining counsel in the NYAGO proceeding, without more, is insufficient to meet Mackey's burden to demonstrate that his disclosure of the

Townsend Memo was inadvertent.  To the contrary, it appears that Mackey and his lawyer may have made the reasoned, strategic choice to produce to the NYAGO the information it requested.

Mackey relies on Cox v. Adm't U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994), to support his argument that, because he never placed the Townsend Memo or its alleged conclusions at issue in this case, he did not waive the attorney-client privilege.  [164 at 3].  Mackey's reliance on Cox is misplaced. In Cox, the court considered the issue of "waiver by implication," whereby the party asserting the privilege places the privileged information at issue in the case through some affirmative act, such that "fairness requires an examination of otherwise protected communications."  Cox at 1419.  Here, Mackey waived the privilege by disclosing the Townsend Memo to third parties.  It is not necessary to find that Mackey placed the Townsend Memo at issue in this case, and Cox does not provide otherwise.

Even if Mackey had not directly waived the privilege by disclosing the Townsend Memo to third parties, Mackey waived any privilege by implication when he raised a "good faith" defense and asserted that he did not intend to defraud investors.  At trial, Mackey presented evidence that he believed his sale of investments was legal.  He injected the issue of his knowledge of the law into the

case and thus waived the attorney-client privilege.  See, e.g., Cox, 1386 at 1419

(when employer asserted that it believed its leave of absence policy was lawful,

employer injected the issue of its knowledge of the law into the case and thereby

waived attorney-client privilege on the issue; employer could have denied criminal

intent without affirmatively asserting that it believed its acts were legal); United

States v. Bilzerian, 926 F.2d 1285, 1292-93 (2d Cir. 1991) cert. denied

112 S. Ct. 63 (1991) (in trial for securities fraud, defendant's testimony that he

thought his actions were legal would have put his knowledge of the law and the

basis for his understanding of what the law required at issue; the court reasoned

that "[defendant's] conversations with counsel regarding the legality of his

schemes would have been directly relevant in determining the extent of his

knowledge and, as a result, his intent").

Mackey next argues that the Townsend Memo should have been excluded

because it was not relevant, and even if it were, admission of the Townsend Memo

was unduly prejudicial.  At trial, Mackey argued: (1) that Townsend's opinions and

advice relate to the Loan Warrantee Program, an investment program separate and

structurally different from the Wealth Enhancement Club upon which the charges

in the Indictment are based; (2) that the central issue in the memo concerns

whether the Warrantee Program is a security; and (3) that any probative value

would be substantially outweighed by undue prejudice, or mislead the jury or

confuse the issues.  The Court found that the Townsend Memo was relevant to the

issue of intent, including because the memo warned against the use of high-yield

investments in a program which represented very high rates of return, and

cautioned that the statements discussed in the memo likely would raise concerns

among government regulators and investigative agencies.  The Court concluded

that, because Mackey's intent in dealing with investors was a central issue in the

case, these statements were relevant to Mackey's intent in continuing to offer the

Wealth Management Program after the memo was received.  Having found that the

Townsend Memo was relevant to Mackey's intent, the Court concluded that some

extraneous portions of the memo should be redacted to avoid misleading the jury

or confusion of the issues.  The following relevant provisions of the Townsend

Memo were admitted:

- **Comment [RT4]**:  "Here you represent that the 17% fee is used to generate sufficient revenue to pay off the client's mortgage in five years.  Any law enforcement entity would see this is extremely difficult or from their perspective 'impossible' and thus a representation that is fraudulent."

- **Comment [RT8]**:  "I also strongly suggest that the U.S. and State authorities will see this as a Ponzi Scheme, UNLESS you can show a bank and asset balance that clearly demonstrates that you will with CERTAINTY meet the obligations of all your warranty holders when due."

- **<u>Further Comment from Robert Townsend</u>**:  "If you are relying on a high yield investment program as the basis of generating the yield to pay the warranty obligations, you may well be in very hot water here, as in the United States the government has taken the position that these programs are all frauds, and though you may be the 'victim' of a fraud because you are relying on someone else who represents that they have such a HYIP program (and who are probably operating a Ponzi Scheme themselves), your lack of due diligence in finding this out before you invest your clients' money is no defense to criminal prosecution.  Additionally, now that you are on notice of what you are doing and that it is in all probability illegal (by this Memo to you), this even makes it worse for you when the 'FBI comes calling'; [sic] i.e. you were warned by counsel and you did nothing to extract yourself from this situation."

- **CONCLUSION:**
"Unless you can qualify as an insurance company and register in the states in which you are operating, it appears that you are illegally selling securities AND you are operating a Ponzi Scheme which carries significant civil and criminal liability, both from the states in which you operate and the U.S. government.  I suggest that you begin IMMEDIATELY to CEASE AND DESIST from this business and reorganize as an insurance company or begin a process of extraction from the business in a manner that will make the warranty holders 'whole.'  I assume that you made an honest mistake in believing that what you are doing is lawful, but such a mistake has to be dealt with promptly as it is not a defense to prosecution.  The 'extraction process' is a difficult process and I suggest that you hire competent counsel to assist you in this process.  I also suggest that you seek a criminal attorney NOW and explain what has happened and get his/her advice as to the stance you should take regarding the potential criminal liability.  You need such counsel standing by as you never known when the 'FBI will come calling', [sic] because an investigation may be underway at this time.  The authorities comb the internet for frauds, and there

is a significant possibility that they found your website and are
looking into the matter."

(Townsend Memo, Gov. Ex. 1) (emphasis in original).  The Court also gave the

following limiting instruction:

> I have admitted this memorandum to Mr. Mackey from Robert
> Townsend.  The memo is admitted for a limited purpose and may be
> considered by you only on the issue of Defendant Mackey's intent in
> his financial dealings with investors.
>
> While Mr. Townsend expresses certain personal opinions in the
> memorandum, it will be your responsibility to determine whether
> Defendant Mackey committed the offenses with which Defendant
> Mackey is charged applying the instructions on the law that I give to
> you at the end of the case.  That is, you may consider the memo only
> on the issue of Defendant Mackey's intent.
>
> I further instruct you that this evidence relates to a Loan
> Warrantee Program and acts for which the Defendants are not charged
> in this case.
>
> The evidence of these acts may be similar to those charged in
> the Indictment, but you must not consider this other program as
> evidence that they committed the crimes charged in the Indictment,
> except you may, as I have already instructed you, consider this
> evidence for the limited purpose of evaluating Defendant Mackey's
> intent with respect to the crimes charged in the Indictment.  You may
> not consider this evidence against Defendant Jensen.
>
> Finally, I instruct you that the memorandum was written by an
> attorney.  However, you must not consider the statements or opinions
> of the attorney in the memorandum as the basis of the Defendants'
> guilt or innocence of the crimes charged in this case.

It will be your responsibility after considering all of the evidence in the case to determine whether or not the Defendants are guilty of the crimes charged and specifically what their intent was.

(Transcript of Trial ("Tr.") at 468:4-469:11). Any prejudice perceived by Mackey was addressed and resolved by the redaction of extraneous material and the limiting instruction given. See, e.g., Davis v. Washington, 547 U.S. 813, 829 (2006) (trial courts "should redact or exclude the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence"); United States v. Gari, 572 F.3d 1352, 1363 n.8 (11th Cir. 2009) (rejecting defendant's argument that if any portion of a document is inadmissible, entire document must be excluded, and observing that "[t]rial courts routinely redact inadmissible portions of documents prior to their admission in evidence"); United States v. Perkins, 204 F. App'x 799, 804 (11th Cir. 2006) (per curium) (any error in admission of recorded jailhouse conversation in which defendant referenced her decision to remain silent was harmless; references to defendant's silence were not highlighted by prosecutor, and district court gave curative instruction and redacted references at issue from transcript before giving it to jury); United States v. Bianco, 181 F. App'x 846, 854 (11th Cir. 2006) (per curium) ("because the district court carefully restricted and redacted the evidence such that no direct references were made to the nature of [defendant's] prior

criminal offenses and twice instructed the jury on the proper use of the evidence, the danger of unfair prejudice was minimal as compared to its probative value"); United States v. Calderon, 127 F.3d 1314, 1334 (11th Cir. 1997) (the court's instructions cure prejudice because the jury is presumed to follow them).[7]

Finally, Mackey's attempt to compartmentalize the Loan Warrantee and Wealth Enhancement programs and argue that they are separate and distinct was discredited by the evidence presented at trial. The evidence was that Mackey structured and touted them to investors as based on the same high-yield kind of investment which would produce extraordinary returns. (Tr. at 1207:11-21; 1209:1-1210:3). Funds generated by the sales of both programs were commingled into the same bank accounts, funds from which were used by Mackey for the same purposes, including personal ones. (See, e.g., Tr. at 1006:9-1007:7; 1029:2-1030:8; 1017:10-1019:13; Gov. Exs. 35.1-35.19).

There is no new evidence or legal authority to require the Court to reach a decision different from its earlier rulings on the arguments Mackey reiterates here

---

[7] To the extent Mackey asserts that the memo was prejudicial because Townsend's legal opinions and advice involved specialized knowledge, any perceived prejudice resulting from Townsend being an attorney was also addressed by the Court's limiting instruction, which provided: "Finally, I instruct you that the memorandum was written by an attorney. However, you must not consider the statements or opinions of the attorney in the memorandum as the basis of the Defendants' guilt or innocence of the crimes charged in this case." (Tr. at 469:3-7).

in his Motion for New Trial. The evidence is that Mackey did not request the opinion from Townsend and the attorney-client privilege thus does not apply. Even if it did, Mackey waived the attorney-client privilege when he disclosed the Townsend Memo to the NYAGO, and neither Mackey nor his attorney took any action to prevent the disclosure. The Court finds that the Townsend Memo was highly probative of Mackey's intent in entering into financial agreements with investors, a central issue in this case and the linchpin of Mackey's defense. Finally, admission of the Townsend Memo, subject to the Court's limiting instructions, was not substantially outweighed by undue prejudice. The Court finds that the interest of justice does not require a new trial based on the admission of the Townsend Memo.

C.    Limitation of the Defense's Cross-Examination Concerning the Joint Venture Agreements

Mackey asserts that the knowledge and understanding of the JVA by those investors who testified at trial was relevant to their credibility and that Mackey should have been allowed to question the witnesses about the JVA risk provisions to challenge and impeach the credibility of the testifying investors. [152 at 13]. Mackey argues he is entitled to a new trial because the Court's limitation on the scope of cross-examination of the investor-witnesses violated his rights of

confrontation and cross-examination, his right to present a defense and his due process rights. [152 at 14].

The Confrontation Clause guarantees a criminal defendant an opportunity to impeach, through cross-examination, the testimony of witnesses for the prosecution. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370 (11th Cir. 1994). A defendant's right to cross-examination is not without limitation; he is entitled "only [to] an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Kentucky v. Stincer, 482 U.S. 730, 739 (1987). "The Sixth Amendment only protects cross-examination that is relevant." United States v. Lyons, 403 F.3d 1248, 1255-56 (11th Cir. 2005) (quoting Jones v. Goodwin, 982 F.2d 464, 469 (11th Cir.1993)); see also United States v. Novaton, 271 F.3d 968, 1006 (11th Cir. 2001) ("[A] defendant is only entitled to cross-examine a witness if the information sought to be elicited [is] relevant.") (citation and internal quotation marks omitted)). Thus, a trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Lyons, 403 F.3d at 1255-56.

Mackey was charged with mail and wire fraud, which required the Government to prove (1) intentional participating in a scheme to defraud, and (2) the use of the interstate mails or wires in furtherance of that scheme. United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. Id. The government is not required to prove that a scheme to defraud would deceive persons of ordinary prudence, and neither actual deception nor reliance is necessary to establish mail fraud if the defendant had the conscious intent to defraud. United States v. Svete, 556 F.3d 1157, 1166 (11th Cir. 2009); see also Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991) ("the government can convict a person for mail or wire fraud even if his targeted victim never encountered the deception – or, if he encountered it, was not deceived"). An intent to defraud may be found when the defendant believed that he could deceive the person to whom he made the material misrepresentations. Maxwell, 579 F.3d at 1301; United States v. Cooper, 132 F.3d 1400, 1405 (11th Cir. 1998).

Mackey argues that the investor-witnesses' understanding of the JVA was "directly related" to his defense that he did not intend to defraud investors. Mackey argues that the prohibition on cross-examining the witnesses regarding

their understanding "was unsustainable in view of the fact that the investors personally executed the Joint Venture Agreements and warranted that they had read and understood all the provisions of the Agreements."  [152 at 12].

That the JVA contained risk-waiver and "best-efforts" provisions is not in question, nor is whether a particular investor signed the JVA and agreed to be bound by its terms.  Indeed, at trial Mackey was permitted to show each investor the risk and other disclosure provisions of the JVA and he did so, asking each witness if they were aware of these provisions in the JVA.  (See, e.g., Tr. at 685:18-691:6; 762:1-766:3; 800:21-801:12).[8]  That Mackey "disclosed" the risks

---

[8]  For example, on cross-examination of Donald Bowen, Mackey's attorney showed Bowen his JVA and asked:

> Q.      You signed these; correct?
> A.      Yes, sir.
> Q.      And so it is your signature on these documents; correct?
> A.      Yes, sir.
> Q.      Prior to signing the document, did you review the contents of the document?
> A.      Yes, sir.
> . . .
> Q.      . . . Were you - - is there a - - to your recollection, a paragraph regarding risk in your agreement?
> A.      There is a paragraph I believe in there, something about risk.
> Q.      And did you read that?
> A.      Yes, sir.
> Q.      On page ten of your agreement at Paragraph 16 regarding risk, did you read that paragraph when you signed?
> A.      Yes, sir.
> . . .

of investing could support that he did not intend to defraud investors, but whether

an investor was deceived is not relevant to Mackey's intent. Thus, an investor-

witness's understanding of the risk provisions of the JVA is not relevant to

Mackey's intent. See Maxwell, 579 F.3d at 1299 (not an abuse of discretion to

limit cross-examination where excluded evidence did not go directly to defendant's

criminal intent but was, at best, of limited relevance, was cumulative, or otherwise

could have been presented at a later stage in trial).

Mackey argues next that "questioning the witnesses regarding the provisions

[of the JVA] was essential to challenging and impeaching the witnesses'

credibility." [152 at 13]. The Court disagrees. "The Sixth Amendment does not

require unlimited inquiry into the potential bias of a witness." Maxwell, 579 F.3d

at 1296 (quoting United States v. De Parias, 805 F.2d 1447, 1452 (11th Cir. 1986),

overruled on other grounds by United States v. Kaplan, 171 F.3d 1351 (11th Cir.

1999)). A central function of the Sixth Amendment right to cross-examination is

---

Q:      Staying with the [JVA], I will refer you to page two, Paragraph 4,
Subparagraph (A):
                The earnings received from this joint venture agreement
                are based on a, quote, best efforts basis, end quote. No specific
                returns or guarantee of success, profit or safety are stated or
                implied.
        Is that contained within your agreement?
A.      Yes, sir, that's what it states.

(Tr. at 685:21-686:3; 687:7-687:15; 688:20-689:3).

to expose the witness's motivation in testifying. <u>United States v. Garcia</u>, 13 F.3d 1464, 1468 (11th Cir. 1994). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." <u>Baptista–Rodriguez</u>, 17 F.3d at 1371. Mackey does not elaborate on how the investor-witnesses' understanding of the JVA relates to their credibility. It is not disputed that Mackey was allowed to offer into evidence that the JVA includes acknowledgement of risk and "best efforts" language, and that the investor-witnesses signed those agreements. As noted before, these provisions were presented to and discussed with each investor-witness at trial. To the extent that Mackey may have wanted to show that the witnesses were bias, the Court admitted evidence at trial to show that investors lost substantial amounts in their investments with Mackey. Certainly the jury had sufficient information to evaluate the credibility of the investor-witnesses and any perceived bias.[9] Mackey had a full and fair opportunity to impeach the investor-witnesses and to explore any bias and

---

[9] The Court notes further that Mackey provided testimony over two days that he did not intend to defraud investors, including because he disclosed that there was risk involved in investing and that rates of return were not guaranteed. In convicting Mackey, the jury appears to have found Mackey not credible and rejected the majority of his testimony.

motive they might have for testifying. The Court finds that Mackey's Sixth

Amendment right to cross-examination was not violated. See Maxwell, 579 F.3d

at 1296 ("[t]he test for the Confrontation Clause is whether a reasonable jury

would have received a significantly different impression of the witness' credibility

had counsel pursued the proposed line of cross-examination.") (quoting Garcia,

13 F.3d at 1469). The interest of justice does not require a new trial based on the

Court's limitation of Mackey's cross-examination of investor-witnesses.

D. Proposed "Theory of the Defense" Instruction

Mackey next argues that the Court's refusal to instruct the jury on his

proposed theory of the defense "deprived him entirely of an opportunity to fully

and specifically present his theory of his defense." [152 at 15]. The requested

instruction provides:

> The Defendants' intent to commit an offense is an essential
> element of each of the offenses charged against the Defendants. In
> order to find the Defendants guilty of the offense of conspiracy, you
> must find beyond a reasonable doubt that each of the Defendants
> knowingly and willfully conspired to commit wire fraud or mail fraud.
> In order to find the Defendants guilty of the offenses of wire fraud or
> mail fraud, you must find that each of the Defendants knowingly
> devised or participated in a scheme to defraud or to obtain money or
> property by using false pretenses, representations, or promises, and
> acted with the intent to defraud.

> It is the Defendants' defense that the Defendants did not intend
> to defraud anyone and that they acted in good faith in investing
> investors' funds. If you find or possess a reasonable doubt that the

Defendants did not possess an intent to defraud, or to conspire to commit fraud, you cannot find the Defendants guilty of the charged offenses. Likewise, if you find or possess a reasonable doubt that the Defendants acted in good faith, you cannot find the Defendants guilty of the charged offenses.

You may consider all of the following as evidence to support any reasonable doubt that the Defendants did not possess the required intent to defraud, or to conspire to commit wire fraud or mail fraud, or that the Defendants acted in good faith:

- Any evidence that the Defendants did not convert the investment funds to their own use;
- Any evidence that the Defendants did not retain control of the funds, but sent the funds to other persons or entities for investment;
- Any evidence that the Defendants actually invested the funds provided by investors;
- Any evidence that the Defendants did not realize a profit from the investments;
- Any evidence that the Defendants contacted any law enforcement agencies, including the Federal Bureau of Investigation, claiming that they had been defrauded by other persons or entities;
- Any evidence that the Defendants did not want any new investors, and considered ceasing conducting business; and
- Any evidence that the failure of the investments was merely a business venture which went bad.

If any of the evidence above creates any reasonable doubt that the Defendants did not intend to defraud anyone, or conspire to defraud anyone, or leads you to conclude that the Defendants were acting in good faith, you must acquit the Defendants.

[109.1]. Mackey asserts that, "[s]ince there was some evidence supporting Mackey's proposed theory of the defense instruction, the Court should have given the instruction." [164 at 8].

"[A] refusal to give a requested instruction is an abuse of discretion if: (1) the instruction is correct; (2) the court did not address the substance of the instruction in its charge; and (3) the failure to give the instruction seriously impaired the defendant's ability to present an effective defense." United States v. Maxwell, 579 F.3d 1282, 1303 (11th Cir. 2009) (quoting United States v. Sirang, 70 F.3d 588, 593 (11th Cir. 1995)). Thus, while "the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence," United States v. Ruiz, 59 F.3d 1151, 1154 (11th Cir. 1995), the second prong of the analysis requires a court to determine also "whether the subject matter of the requested instruction was substantially covered by other instructions," United States v. Martinelli, 454 F.3d 1300, 1315 (11th Cir. 2006) (quoting United States v. Carrasco, 381 F.3d 1237, 1242 (11th Cir. 2004)).

While Mackey may have presented some evidence to support his defense that he did not intend to defraud investors and acted in good faith, his requested instruction was substantially covered by the Court's instructions to the jury. The instruction the Court gave was similar to Mackey's first requested instruction on

"good faith," which, like the Theory of the Defense Instruction, reiterated the

defense of good faith to a charge requiring specific intent and put the good faith

defense in the context of business ventures.[10]  The Court instructed the jury:

> The Defendants contend in this case that they did not intend to defraud investors and acted in good faith in making representations to investors.  Good faith is a complete defense to a charge that requires intent to defraud.  A defendant is not required to prove good faith.  The Government must prove intent to defraud beyond a reasonable doubt.
>
> An honestly held opinion or an honestly informed belief cannot be fraudulent intent even if the opinion or belief is mistaken.  Similarly, evidence of a mistake in judgment, an error in management or carelessness cannot establish fraudulent intent.
>
> But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

(Tr. Jury Charge [176] at 10:8-10).  The Court instructed the jury on the specific

intent to defraud required for mail fraud:

> To act with "intent to defraud" means to act knowingly and with the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

(Id. at 12:18-21).[11]  The Court further instructed the jury that "[t]he word

'knowingly' means that an act was done voluntarily and intentionally and not

---

[10]  Mackey's proposed "good faith" instruction did not include the sentence, "The Defendants contend in this case that they did not intend to defraud investors and acted in good faith in making representations to investors."  [73].

because of mistake or by accident." (Id. at 15:3-5). The instructions given by the

Court made clear that, to find Mackey guilty of wire or mail fraud, the jury had to

find that Mackey acted with the specific intent to defraud investors. Mackey did

not object to any of these instructions. It was also clear that a good-faith belief by

the Defendant was a complete defense to the specific intent to defraud. The

subject matter of Mackey's requested instruction was substantially covered by the

Court's instructions to the jury.

Mackey argues that the proposed Theory of the Defense Instruction was not

merely a "good faith" instruction, but also "embraced numerous other elements of

the defense" including evidence that is inconsistent with alleged criminal intent to

defraud. The portion of Mackey's requested instruction that he contends was not

substantially covered in the Court's instructions consists of seven (7) categories of

evidence that the jury "may consider . . . as evidence to support any reasonable

doubt that the Defendants did not possess the required intent to defraud, or to

conspire to commit wire fraud or mail fraud, or that the Defendants acted in good

faith." [109.1 at 3-4]. While Mackey may have presented some evidence which

falls into these categories, the requested charge is argumentative and summarizes

---

[11] The Court gave a similar instruction regarding the wire fraud counts: "The
'intent to defraud' is the specific intent to deceive or cheat someone usually for
personal financial gain or to cause financial loss to someone else." (Tr. Jury
Charge at 10:8-10).

the evidence favorable to Mackey. The requested charge improperly directs the jury's attention to certain facts which the charge seeks to have emphasized by the Court. That Mackey may have presented "some evidence" to support these facts does not change the partisan, argumentative nature of the requested charge. See Maxwell, 579 F.3d at 1304-1305 (defendant's "proposed jury instructions contain partisan and argumentative statements of law and fact, and the district could was not obliged to present them to the jury in that form"); United States v. Dohan, 508 F.3d 989, 993 (11th Cir. 2007) (in prosecution for conspiracy to commit wire and mail frauds and money laundering in connection with a Ponzi scheme, not an abuse of discretion to refuse to give defendant's theory of defense instruction which emphasized the objective factors of repayment and lack of profit as indicating lack of intent); United States v. Paradies, 98 F.3d 1266, 1287 (11th Cir. 1996) (defendant not entitled to requested charge that was partisan and aspired to "place the [defendants'] desired factual findings into the mouth of the court"); United States v. Barham, 595 F.2d 231, 244-245 (5th Cir. 1979) cert. denied, 450 U.S. 1002 (1981) (trial court did not err in refusing to give requested theory of the defense instruction that was "essentially a recounting of the facts as seen through the rose-color glasses of the defense" and "more in the nature of a jury

argument than a charge").[12]  The Court's refusal to give Mackey's requested

Theory of the Defense Instruction did not impair Mackey's ability to defend

himself, including because the fact-intensive portion of the requested instruction

that was not given was simply a summary of evidence Mackey introduced at trial

and which Mackey's counsel reviewed in his closing statement.  See Martinelli,

454 F.3d at 1317 (defendant's ability to defend himself not seriously impaired

where evidence of good faith was slight and defendant's attorney argued good faith

to the jury in his closing).  The interest of justice does not require a new trial based

on the Court's refusal to give Mackey's Theory of the Defense Instruction.

     E.    Mackey's Additional Claims

Despite being represented by counsel, Mackey filed *pro se* his "Defendant's

Amendment Reply to Government's Opposition Motion for a New Trial"

("Amended Motion").  Rule 57.1D(3) of the Court's Local Rules of Criminal

Procedure provides:

> ***Pro Se* Appearance Limitations**.  Whenever a party has appeared by
> attorney, the party may not thereafter appear or act in the party's own
> behalf in the action or proceeding or take any step therein unless the
> party has first given notice of the party's intention to the attorney of
> record and to the opposing party and has obtained an order of
> substitution from the court.

---

[12]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit
Court of Appeals issued before the close of business on September 30, 1981.

LCrR 57.1D(3), ND Ga.; see also United States v. Daniels, 572 F.2d 535, 540 (5th Cir. 1978) (a defendant has the right to represent himself in a criminal trial and he also has the right to the assistance of counsel, but he does not have the right to a "hybrid representation," partly by counsel and partly by himself).  Mackey has not complied with the Court's Local Rules and his *pro se* filings are not properly before the Court.  While not required to do so, the Court elects to address Mackey's arguments.

Mackey first contends that the Court erred in allowing the Government to introduce "hearsay testimony into evidence, from a deceased, unindicted co-conspirator," Archie McKinnon, who worked as an intermediary of ASM in dealing with investors, but who passed away in 2009.  [163.3 at 1].  Several of the investor-witnesses testified at trial about their interactions with Mr. McKinnon and what Mr. McKinnon told them about ASM and the Government introduced emails sent by Mr. McKinnon to the investor-witnesses.  The Court allowed the testimony and exhibits, but instructed the jury with each investor-witnesses' testimony that his or her testimony was not being offered for the truth of the matter asserted, and that the jury could consider the statements only to show the investor's election to participate in the ASM program.  (See, e.g., Tr. at 496:18-497:1; 600:3-10; 726:24-727:1).  These statements were admissible for the nonhearsay purpose as

limited by the Court's limiting instruction.  <u>See</u> Fed. R. Evid. 801(c); <u>United States</u> <u>v. Jimenez</u>, 564 F.3d 1280, 1287 (11th Cir. 2009) (admission of a statement made by a declarant whom the defendant has not had the opportunity to cross-examine, for a purpose other than for the truth of the matter asserted, does not violate the Confrontation Clause); <u>United States v. Jordan</u>, 316 F.3d 1215, 1258 (2003) (what defendant said to witnesses was admissible to show witnesses' state of mind).

Mackey next argues that the Government failed to disclose evidence related to the investigation of other Ponzi schemes in which Mackey purportedly invested. Mackey contends that "F.B.I. agent Rice did not give the defense any contracts nor did she say anything about the about the F.B.I. [sic] agents that defendant [sic] Mackey spoke to and testified to, in his trial."  [165.3 at 3].  Under <u>Brady v.</u> <u>Maryland</u>, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).  In deciding if a new trial is warranted based on a <u>Brady</u> violation, a defendant must show that: (1) the government possessed evidence favorable to him; (2) he did not possess the evidence and could not have discovered it with reasonable diligence; (3) the prosecution suppressed this evidence; and (4) had the evidence been revealed to the defense, there is a

reasonable probability that the outcome of the proceedings would have been different.  United States v. Newton, 44 F.3d 913, 918 (11th Cir. 1995).  The exculpatory value of the evidence must be supported by more than the defendant's "bare assertion" that it supports a particular theory.  See United States v. Kersey, 130 F.3d 1463, 1466 (11th Cir.1997).

To the extent Mackey contends that the Government withheld evidence which would show that Mackey was an alleged victim of a Ponzi scheme himself, Mackey testified and presented evidence about his involvement in these other fraudulent investment programs, such as Eel River and U.S. Funds.  The Court notes that the defense called Special Agent Eileen Rice, who testified about her interaction with Mackey, specifically that Mackey had reported to her allegations of financial losses in connection with investments Mackey made with other people's funds through ASM.  Mackey was free to interrogate Agent Rice about documents or other matters he thought relevant to this case.  Mackey does not present any evidence showing he did not possess the documents he suspects was denied and has not shown that the government failed to meet its discovery or Brady obligations.  Mackey also fails to show that the outcome of the proceedings would have been different if he had the documents he suggests were withheld.

Finally, Mackey argues that "with the fact the defense counsel allowed all o [sic] these violations to his client's rights . . . and counsel knew of all of the abuses of defendants [sic] rights, does raise the issue of his effectiveness." [165.3 at 6]. Mackey asserts that the trial "almost seem to be corrupt," and that Mackey "argued with [counsel] while all these things were going on at defendant's trial," but his attorney would not "expose these issues in this motion." Id.

Ineffective assistance of counsel claims are evaluated under the standards announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The principles governing ineffectiveness claims apply in a motion for a new trial. Id. at 697. Under Strickland, a defendant must establish that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. In this analysis, "judicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Courts "must avoid second-guessing counsel's performance," recognizing that "the Petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). This presumption is especially true with respect to tactical or strategic decisions. Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.

33

1995).  Second, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

The Court has determined that Mackey is not entitled to a new trial based on any of the perceived errors presented in his Motion for a New Trial, or Amended Motion.  Mackey contends that his trial counsel was ineffective because he "allowed" these perceived violations of Mackey's rights at trial.  The Court, having considered the perceived violations Mackey suggests and having evaluated the performance of his counsel at trial – advocacy that was zealous and thoughtful – concludes that there is no basis to find that Mackey received ineffective assistance of counsel.  That counsel did not, or would not, make every argument Mackey desired does not make his assistance ineffective.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983) (a defendant has complete control over the four "fundamental decisions" in his case: whether to plead guilty, waive a jury, testify in his or her own behalf or to take an appeal; there is no constitutional right to compel counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points); <u>United States</u> <u>v. Burke</u>, 257 F.3d 1321 (11th Cir. 2001) (attorney is not ineffective in failing to

follow defendant's advice). Mackey is not entitled to a new trial based on ineffective assistance of counsel.[13]

## III.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Andrew S. Mackey's Motion for New Trial [152] and Amended Motion for New Trial [165] are **DENIED**.

**SO ORDERED** this 8th day of August, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[13] Mackey argues also that the Government introduced "perjured evidence," and parenthetically refers to Government Exhibit 1205, an April 2011 email from Mackey to an ASM investor, Judy Callaway, soliciting her participating in a questionable business opportunity. Mackey fails to demonstrate how this evidence was "perjured."