IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANDREW S. MACKEY, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:10-CR-0310-WSD-JFK-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:16-CV-3777-WSD-JFK |
| | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant, Andrew S. Mackey, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his convictions and sentences entered in this Court under the above criminal docket number.  The matter is before the Court on the amended motion to vacate [310],[1] Respondent's answer-response [312], and Movant's reply [317].

---

[1]Movant timely filed his initial § 2255 motion and was required by the Court to amend.  (Mot. to Vacate, ECF No. 305; Order of Nov. 7, 2016, ECF No. 306).  The amended § 2255 motion at docket entry 310 is the operative § 2255 motion in this action.  (Am. Mot. to Vacate, ECF No. 310; see Order of December 19, 2016, at 5, ECF No. 309).

I.     **Discussion**

A.     **Background**

Movant owned and operated A.S.M.[2] Financial Funding Corporation (ASM) and ASM's Wealth Enhancement Club (WEC).  (See Superseding Indictment at 2, ECF No. 54).  Movant explained that his investment program was "designed" to use investor monies to pay other investors their expected earnings, (Trial Tr. Vol. VI at 1452-53, ECF No. 220), and that this design allowed him not to interrupt the portion of investor funds that was compounding at a high rate – "like I said, $400,000 can be $3 million in a short period of time[,]" (id. at 1458, see also 1450, 1453).  The investors' money – approximately twelve-million dollars – was depleted by Movant and Inger L. Jensen, having been either used or lost in payment to other investors, on ASM expenses, on personal withdrawals, or on Movant's investments that allegedly were compounding at extraordinary rates.  See United States v. Jensen, 573 F. App'x 863, 868, 873 (11th Cir. 2014), cert. denied, Mackey v. United States, _ U.S. _, 136 S. Ct. 217 (2015).

_____

[2]ASM stands for Movant's initials.  (Trial Tr. Vol. VII at 1712-13, ECF No. 221).

The Northern District of Georgia Grand Jury charged Movant and Jensen with (1) attempt and conspiracy to commit fraud, 18 U.S.C. § 1349, Count One; (2) wire fraud, 18 U.S.C. §§ 1343 and 2, Counts Two through Eight; and (3) mail fraud, 18 U.S.C. §§ 1341 and 2, Counts Nine through Seventeen.  (Superseding Indictment). Movant pleaded not guilty and, represented by Craig Gillen and Anthony Lake, proceeded to trial along with Jensen.  (Minute Entries, ECF Nos. 62, 130).  On May 16, 2012, the jury found Movant guilty on Counts One through Four, Six, and Eight through Seventeen. (Jury Verdict, ECF No. 143).  By judgment entered on November 16, 2012, the Court imposed a total 324-month sentence.  (J., ECF No. 239).  On July 31, 2014, the Eleventh Circuit Court of Appeals affirmed the judgment against Movant.  Jensen, 573 F. App'x at 877.

On October 11, 2016, Movant filed the instant § 2255 motion, as amended. (Mot. to Vacate; Am. Mot. to Vacate).  Movant raises twelve grounds for relief: (1) ineffective assistance of trial counsel, (2) insufficient evidence to support his convictions, (3) insufficient evidence to support his sentence, (4) court error in imposing a substantively unreasonable sentence, (5) prosecutorial misconduct in failing to disclose exculpatory evidence, (6) egregious prosecutorial misconduct, (7) court error in denying the motion for a directed verdict, (8) court error in charging

3

the jury, (9) court error in regard to investor testimony, (10) court error in admitting the legal memorandum written by Attorney Robert Townsend, (11) newly discovered evidence, and (12) entitlement to a sentence reduction.  (Am. Mot. to Vacate at 5-9 and Addendum).  Respondent has responded to each of the twelve grounds for relief, as presented by Movant.  (Resp't Resp., ECF No. 312).

Movant has filed a reply that is loosely organized and does not follow his previous twelve-ground format.  (Mov't Reply, ECF No. 317).  Movant's reply includes an introduction and summary of the case in which, without citation to evidence in the record, he broadly asserts that the Court was biased and denied his rights by allowing the prosecutors to misrepresent all the facts in the case.  (Id. at 1-2). Movant asserts that he is the victim of a fabricated story that has been "believed all the way up to the Eleventh Circuit Court of Appeals."  (Id. at 5).  Movant states,

> There is a quoted [sic] from the United States Supreme Court, that summarizes the Government's smoke and mirror tactics like this. "There appears to be a systematic problem with the prosecutions of federal offenders, in that the government consistently engages in the deliberate misrepresentation of the facts, with the sole intent of creating a smoke screen to divert the court's attention away from materiality of the evidence presented. . . ."  That is exactly the case before this Honorable Court.

(Id. at 4).  A search of United States Supreme Court cases (and in fact all federal cases) reveals no statement as quoted by Movant.[3]  Movant also provides a statement of the true facts,[4] followed by a presentation of legal points, in which Movant addresses:  (1) his ground for relief that counsel was ineffective in allowing the summary charts, (2) use of the Townsend memorandum, (3) admittance of the Archie S. McKinnon emails, (4) newly discovered evidence, (5) use of the Howey test,[5] and (6) the co-mingling of funds.  (Id. at 15-30).[6]  Movant's six legal points are addressed below, along with the applicable ground for relief and governmental response to which they are deemed to reply.

Movant has not moved to amend, and the reply is *not* construed to raise any additional claims.  Additionally, to the extent that the parties' pleadings contain

---

[3]The first portion of Movant's reply is not further addressed.

[4]In his statement of the true facts, Movant does not cite to the government's particular responses to his twelve grounds for relief but challenges the trial evidence attached to the government's response and their Statement of Facts.  (Mov't Reply at 6-7, 9).  The arguments in Movant's statement of the true facts do not change the recommended outcome.

[5] S.E.C. v. W. J. Howey Co., 328 U.S. 293 (1946).

[6]In his legal points, Movant also argues that appellate counsel was ineffective for failing to raise meritorious issues that Movant raised in his amended motion for a new trial.  (Mov't Reply at 27-28).  Movant cites generally to document number 152 and presents nothing that changes the outcome.

5

conclusory assertions that are not supported by citations to the record, the Court clarifies that it does not consider such assertions.  See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) ("The Seventh Circuit memorably said that appellate judges 'are not like pigs, hunting for truffles buried in briefs.' . . . Likewise, district court judges are not required to ferret out delectable facts buried in a massive record . . . ." (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991))); Skyline Corp. v. N.L.R.B., 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements . . . in briefs are not evidence."); Moss v. United States, No. 8:06-CR-464-T-17TGW, 2010 WL 4056032, at *18 (M.D. Fla. Oct. 15, 2010) (stating that arguments which "contain very limited citations to the record and no citations to any legal authority" fail).

### B.    28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally

6

convicted," United States v. Frady, 456 U.S. 152, 164 (1982), and it is the movant's

burden to establish his right to collateral relief, Rivers v. United States, 777 F.3d 1306,

1316 (11th Cir. 2015), cert. denied, _ U.S. _, 136 S. Ct. 267 (2015).

Accordingly, "[o]nce a matter has been decided adversely to a defendant on

direct appeal it cannot be re-litigated in a collateral attack under section 2255." Rozier

v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (quoting United States v. Nyhuis,

211 F.3d 1340, 1343 (11th Cir. 2000)).  Further, collateral review of a claim that could

have been raised on direct appeal, but was not, is foreclosed unless the movant can

show cause and prejudice for his default or a miscarriage of justice/actual innocence.

McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).[7]  Section 2255 relief

---

[7]"[T]o show cause for procedural default, [a movant] must show that some
objective factor external to the defense prevented [him] or his counsel from raising his
claims on direct appeal . . . " or that the matter was not raised because of ineffective
assistance of counsel.  Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004);
see also Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that,
absent an "objective factor external to the defense" as cause, the movant must show
that the default was caused by ineffective assistance of counsel (quoting Murray v.
Carrier, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)).  If a petitioner
shows cause, he also must show prejudice – that the error complained of "worked to
his *actual* and substantial disadvantage, infecting his entire trial with error of
constitutional dimensions."  Reece, 119 F.3d at 1467 (emphasis in original) (quoting
Frady, 456 U.S. at 170) (internal quotation marks omitted).  To make a credible
showing of actual innocence, "a movant 'must show that it is more likely than not that
no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light
of . . . new evidence of innocence."  McKay, 657 F.3d at 1196 (alteration in original)

"is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

---

(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

8

### C.   **Movant's Twelve Grounds for Relief**

### 1.   **Ineffective Assistance of Trial Counsel**

Movant asserts that trial counsel was ineffective for failing to (a) exclude the summary charts, (b) obtain an expert to analyze the summary charts and contest them at trial, (c) exclude the Townsend memorandum and related testimony, (d) cross-examine Townsend on his book, (e) exclude emails on ASM's unrelated business activities, (f) file necessary pretrial motions, (g) call Gerald M. Shaw and Ray Benton as witnesses, (h) call Federal Bureau of Investigation (FBI) agent Dan Whalen as a witness, and (i) move for a judgment of acquittal.  (Mov't Mem. at 3-18,[8] ECF No. 310-1).

### a.   **Counsel's Failure to Exclude Summary Charts**

At issue here is the summary evidence in government exhibits 1107 and 1108. Government exhibits 1107 and 1108 were admitted into evidence after counsel for Movant stated, "we stipulated to them, Your Honor.  We stipulated to all of the documents."  (Trial Tr. Vol. IV at 980-81, ECF No. 216; <u>see also</u> Gov't Tr. Ex. 1107, ECF No. 312-9; Gov't Tr. Ex. 1108, ECF No. 312-10).  Exhibit 1108 is a summary of

---

[8]Movant's memorandum contains no pagination, and the Court cites to the Court's electronic pagination.

the evidence (1) that lists the investors, the total amount received from each investor, the total amount paid to each investor, and the total loss or gain for each investor and (2) that shows, for all investors listed, a total receipt of $12,230,30016, a total payment of $5,544,917.05, and a total loss to investors of $6,675,383.11.  (Gov't Ex. 1108).  Exhibit 1107 is a summary of the same evidence that breaks down in greater detail the receipts from and payments to each investor.  (Gov't Tr. Ex. 1107).

Government exhibit 111 also was admitted, without objection, at trial.  (Trial Tr. Vol. II at 328, ECF No. 214).  In describing exhibit 111, William Shawn Murnahan, trial counsel for the Securities and Exchange Commission (SEC), testified that the SEC had subpoenaed and received from Movant and Jensen, through their counsel, copies of the investment contracts for the Loan Warranty Program and the WEC, and that all of the received documents had been copied onto a DVD – government exhibit 111. (Id. at 325-30, 341-42, 353-54).  Michelle Davis, forensic accountant with the FBI, testified that she had examined all of the subpoenaed documents, which included approximately 227 joint venture agreements and represented 159 individuals, and that her analysis was shown in government exhibits 1108 and 1107.  (Trial Tr. Vol. IV at 1012-15).  At sentencing, the Court determined that the loss amount was $6,650.967

10

and that it was comprised of $5,739,000 from WEC contracts and $800,000 in relevant conduct.  (Sentencing Tr. at 133, ECF No. 231).[9]

In this ground for relief, Movant refers to summary charts 1108 and 1109 (the Court construes Movant to refer to summary charts 1107 and 1108)[10] and asserts that counsel was ineffective for allowing the summary charts into evidence without objection, that the charts did not fairly represent the evidence, and that had they been excluded there is a reasonable probability that the jury would have acquitted Movant. (Mov't Mem. at 4-5).  Movant supports this ground for relief with ten assertions.  The Court presents Movant's ten assertions, with brief notations, and then addresses ground one a. further below.

1.  The charts do not differentiate between money controlled by ASM, which was not subject to the indictment, and money coming through WEC.  There was no consensus on the number of investors in the WEC or the amount of money those investors lost. (Id. at 5).[11]

_____

[9]Additional facts are noted below in relation to Movant's specific assertions in support of this ground.

[10]There is no government exhibit 1109. Government exhibit 1107, the Summary of Payments, is the more detailed back up exhibit to the Summary of Payments at government exhibit 1108.

[11]The summary chart shows a total loss to investors of $6,675,383.11.  (Gov't Ex. 1108).  At sentencing, the Court determined that the loss amount was $6,650,967 and that it was comprised of $5,739,000 from WEC contracts and $800,000 in relevant

11

2.  The charts only revealed that ASM was conducting business unrelated to the charged offense.  (Id.).[12]

3.   The summary charts were not supported with evidence of the underlying agreements, and, at sentencing, the government failed to produce evidence to support the charts.  (Id. at 5-6).  Only sixteen contracts were introduced at trial.  (Id. at 8).[13]

4.  Throughout trial and at sentencing Movant contested the government's figures and the accuracies of the summaries.  (Id. at 6).[14]

---

conduct. (Sentencing Tr. at 133).  Movant fails to show that counsel had evidence that would have rebutted the loss amount based on a differentiation between money related to WEC and money controlled by ASM.

[12]If the charts had revealed that ASM was conducting only business that was unrelated to the charged offense, counsel's alleged failure to challenge the charts is non-consequential.

[13]The evidence shows that the government received over 200 copies of contracts from Movant and Jensen and that they were admitted in government exhibit 111. Although Movant carries the burden to show that he is entitled to collateral relief, he does not show otherwise.

[14]Movant cites to his own testimony in which he (1) disagreed with the summary chart that he took in a total of twelve million dollars and stated that he took in "I don't know, maybe four or five.  I'm not sure"; (2) disagreed that he paid out to other investors one half of what he took in and stated that he did not remember because he did not calculate it but that he could have paid other investors a half or two thirds of what he took in; (3) disagreed that he had invested less than a third of the money he took in and stated that he probably invested a half to two thirds and that he paid out about a third to other investors; and (4) stated that he had received a twenty-five percent per month return on Sepco, which would be well over ninety-six percent a year, and, when asked why his summary bank records revealed no money coming from Sepco, he stated the summary bank records were wrong (Movant did not state that he had records to contradict the summary of his bank records). (Trial Tr. Vol. VI at 1425-26, 1430, 1478-79).  Movant also refers to his sentencing chart, prepared by Rhonda

5. At sentencing the government falsely stated that the underlying evidence supporting the summary charts had been admitted, relying on exhibit 1109, which does not exist. (Id. at 7).[15]

6. Davis apparently assumed that all ASM money was WEC money although her analysis revealed that approximately three million came into ASM's account from other sources, and she added three people to the WEC count simply because they sent money to ASM. (Id. at 9).[16]

---

D. McClendon, an accountant hired by Movant to compute loss for sentencing, as showing substantially different information than the government had shown. (Mov't Mem. at 6). McClendon testified at sentencing to a loss of just over one million dollars. (Sentencing Tr. at 55). Upon questioning by the Court, however, McClendon admitted that 160 people in the aggregate gave Movant $12,290,000, that the most they got back was $5,540,000, and that from their perspective they lost about $7,000,000. (Sentencing Tr. at 70). Movant shows nothing that would have been useful in rebutting the summary charts to any substantial degree.

[15]It is apparent that the government was referring to government exhibit 1107, the Summary of Payments to/From Investors, as it is the more detailed back up exhibit to the Summary of Payments at government exhibit 1108.

[16]Davis's trial testimony does *not* show an assumption that all ASM money was WEC money. Davis in fact testified that $1.7 million dollars came in to ASM from Loan Warranty agreements and that, additionally, thirty-two individuals sent in money based on both WEC and Loan Warranty agreements. (Trial Tr. Vol. IV at 1012-14). Additionally, Davis was cross-examined as to money coming into ASM from non-investor sources. (Id. at 1060, 1064); see United States v. Scott, 427 F. App'x 869, 871 (11th Cir. 2011) ("[W]here the defendant 'has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case, the likelihood of any error in admitting summary evidence diminishes.'" (quoting United States v. Richardson, 233 F.3d 1285, 1294 (11th Cir. 2000))). Movant's reference to three additional investors appears to refer to the three additional investors whose losses were considered at sentencing, which is discussed below in the discussion on assertion number 10. Other assertions based on Davis's testimony are not supported by record

13

7.  The summary showed that investor Bob Frey lost $231,000, but he testified that his loss was only $181,000, and, further, Davis testified that she had made the same mistake (as with Frey) for six investors.  (Id. at 10).[17]

8.  The chart overstates the commission received by Carolee Wolfley from ASM – it states that Wolfley received a $25,000 commission when $17,000 of that commission was for an unrelated mortgage.  (Id. at 9-10).[18]

9.  The chart mis-classified an investment as a miscellaneous payment.  (Id.).[19]

---

citations and are not addressed.

[17]The 1107 summary chart shows that Frey invested $231,000, received $50,000, and lost $231,000.  (Gov't Tr. Ex. 1107 at 12).  The 1108 summary chart correctly states that the loss as $181,000.  The error in the 1107 Chart was brought out at trial.  (Trial Tr. Vol. VII at 1722-23, 1674).  Davis explained that the program she used (in calculating the individual detail) considered the last field in its computations which resulted in the error, that the same error occurred in six instances, but that those errors were not reflected in the overall totals and that, further, the individual loss amounts were correctly reflected in the 1108 summary chart.  (Id. at 1723-25).  Thus, these technical errors were not reflected in the 1108 summary chart, and, further, the errors were corrected before the jury.  The errors are insufficient to show that counsel's stipulation on the Charts prejudiced Movant.

[18]Wolfley testified that she received approximately $25,000 in commissions from ASM and that $17,000 was for an unrelated mortgage loan.  (Trial Tr. Vol. 7 at 1697).  The summary charts do not record commissions and show no payment paid to Wolfley as an investor.  (See Gov't Tr. Ex. 1107 at 40; Gov't Tr. Ex. 1108 at 5).  The Court perceives no error in the summary charts on this matter.

[19]Movant's citations refer to miscellaneous payments, which can be found at government exhibit 1113.  (Gov't Ex. 1113, ECF No. 312-12).  Movant's citations show that his counsel questioned Davis on a check from ASM to JW Salons and Day Spa and asked whether that check should have been considered as a payment to investor John Hall.  (See Trial Tr. Vol. IV at 1084-87).  Davis testified that it appeared to be money from commissions and that Hall did not get any regular payments back

14

10.  At sentencing, the government admitted that the charts incorrectly omitted three investors and $60,000.  (Id.).[20]

Respondent argues that Movant cannot show prejudice because the charts would have been admitted without stipulation under Rule 1006 as the evidence was voluminous, that the joint-venture agreements *were* introduced into evidence, that the

_____

from his investment.  (Id. at 1085).  Movant's counsel also questioned Davis on the miscellaneous payments to William Douglas, the law offices of Donald G. Richards, Salvati Realty, Mortgage Careers, and Pitney Bowes.  (Id. at 1086-87).  Davis indicated that some of the payments involved matters such as rent and gave no indication that any of the payments qualified as returns on investments. (Id.).  Movant also cites to his own testimony in which he (1) described a buy and sell trade in which fifty million would be made over ten months from two billion dollars (a 2.5 percent return over ten months) and (2) stated that the $36,600 fee he paid (apparently to Richards's law office) was the fee for completing a set up for a purchase – "we pay those fees for $250,000 once the trade took place."  (Trial Tr. Vol. VI at 1387-88).  Movant also cites to his counsel's closing arguments that various miscellaneous fees should have counted as an investment rather than a miscellaneous payments. (Trial Tr. Vol. VII at 1800-01).

It is apparent that any risk based on use of the summary charts was reduced by Movant's ability to cross-examine Davis and bring out before the jury the concerns that Movant has raised.  See Scott, 427 F. App'x at 871.  The Court finds no error that is sufficient to show that no reasonable counsel would have stipulated to the summary charts.

[20]At sentencing, Davis testified that they had omitted three victims at trial, who had been included for purposes of sentencing.  (Sentencing Tr. at 32-33).  The omission of victims is insufficient to show that counsel was ineffective in stipulating to the summary charts.

15

inaccuracies affect the weight not the admissibility of the summary evidence, and that Movant had the opportunity to cross examine Davis. (Resp't Resp. at 12-18).

In reply, Movant repeats his prior arguments, (Mov't Reply at 15-19), and argues that the government's arguments need not be addressed, "and the only thing that should be addressed. Is where are those WEC agreements? The importance of those agreements changes all the grounds in the petition," (id. at 23).[21]

Under the applicable standard – which applies to all of Movant's ineffective assistance of counsel claims in ground one a. through i. – a criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Id. at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000). Under the first prong, a petitioner must show that "in light of all the circumstances, the

_____

[21]Otherwise, to the extent that Movant presents conclusory assertions that are unsupported by any citation to the record, the Court in its discretion declines to address them. See Chavez, 647 F.3d at 1061; Skyline Corp., 613 F.2d at 1337; Moss, 2010 WL 4056032, at *18.

identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

"The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  Fed. R. Evid. 1006.  Such summary evidence may be stipulated to by the parties and is deemed substantive evidence.  <u>Peat, Inc. v. Vanguard Research, Inc.</u>, 378 F.3d 1154, 1159 (11th Cir. 2004); <u>see also</u> <u>United States v. Smyth</u>, 556 F.2d 1179, 1184 (5th Cir. 1977) (stating that Rule 1006 contemplates and encourages elimination of objectionable material and stipulation to summary evidence).

"Defense counsel may waive the defendant's right to cross-examine witnesses by stipulating to the admission of evidence." <u>United States v. Gonzales,</u> 342 F. App'x 446, 447-48 (11th Cir. 2009) (citing <u>United States v. Stephens</u>, 609 F.2d 230, 232 (5th Cir. 1980)).  Such stipulation is proper "so long as the defendant does not dissent from

17

his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." Id. at 448 (quoting Stephens, 609 F.2d at 232-33) (internal quotation marks omitted); see also United States v. Robinson, 617 F.3d 984, 989 (8th Cir. 2010) (stating that when a defendant is aware of the stipulation and does not object to the stipulation in court, he is presumed to acquiesce in the stipulation by counsel).  In discussing a stipulation/waiver, the Tenth Circuit Court of Appeals has observed –

> [E]ven assuming that . . . trial counsel did overlook [a] potential . . .
> objection, that cannot by itself justify holding [the stipulation] invalid.
> If a timely objection had been made, for all we know, the government
> could have laid a proper foundation for admission of the [evidence] into
> evidence.  Defense counsel's oversight (if that is what it was) had the
> effect of inducing both the government and the trial judge not to bother
> with doing so.  To reverse [a] conviction because [an exhibit that was
> stipulated to] was wrongly admitted would be to allow [a defendant]
> singlehandedly to create below the grounds for his triumph on appeal.
> See United States v. Hardwell, 80 F.3d 1471, 1487 (10th Cir. 1996) ("A
> defendant cannot invite a ruling and then have it set aside on appeal.").

United States v. Aptt, 354 F.3d 1269, 1283 (10th Cir. 2004).

On collateral review, it is the movant's burden to demonstrate that no reasonable counsel would have stipulated to the admission of the evidence and that the movant was prejudiced.  See Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999) (discussing ineffective assistance in regard to stipulation at trial); see also Chandler v.

18

United States, 218 F.3d 1305, 1325 n.41 (11th Cir. 2000) (stating that whether a strategy might have been reasonable is an objective inquiry, not whether the trial attorney "actually made a thought-out decision[,]" but "whether some reasonable lawyer could have acted that way"); Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) ("A strategic decision by defense counsel will be held to constitute ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.'" (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.1983))).  In determining whether counsel was ineffective, the Court may consider whether counsel had evidence to rebut the stipulation.  United States v. Williams, 403 F. App'x 707, 709 (3rd Cir. 2010) (finding that stipulation was legitimate trial tactic where the record did not suggest that counsel had evidence to rebut the stipulation).

Here, Movant did not object or express dissent at the time that trial counsel stated that they were stipulating to the summary exhibits.  Movant did not contend on appeal that the stipulation was involuntary.  Further, Movant does not show that no reasonable counsel would have stipulated to the summary exhibits on the losses to the victims rather than admitting documents for each of the numerous victims, one by one,

19

which would have taken considerable time and emphasized to the jury each individual who suffered harm based on Movant's actions.

Movant also does not show that he was prejudiced because he makes no showing that, absent stipulation, the summary charts would not otherwise have been admitted under Rule 1006 based on the volume of the underlying material and based on the underlying material being available to Movant.  In fact, evidence shows that Movant himself provided the underlying material to the government.  Additionally, Movant had an opportunity to cross-examine Davis on the loss amounts, does not show that he attempted to call and cross-examine (or was prevented from calling and cross-examining) any of the individual victims, and took the stand himself in an attempt to show a different loss amount on the ASM investments.  This ground fails, and Movant's specific assertions – as noted above – fail to show otherwise.

### b.    Counsel's Failure to Obtain Expert to Analyze Summary Charts and Contest them at Trial

Movant argues that counsel was ineffective for failing to obtain an expert to analyze the summary charts and contest them at trial.  (Mov't Mem. at 9-11). Respondent argues that this claim fails as speculative.  (Resp't Resp. at 19-20).

20

The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice. Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting Strickland, 466 U.S. at 693) (internal quotation marks omitted). Movant's argument that counsel was ineffective for failing to obtain an expert for trial fails because in ground 1. b., (Mov't Mem. at 9-11), Movant provides no proffer to demonstrate that said expert was available and willing to testify at the time of trial. See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

### c.    Counsel's Failure to Exclude Townsend Memorandum and Related Testimony

Prior to trial, counsel submitted written argument that the Townsend memorandum – which had been retrieved from the hard drive of a computer used by Movant and which contained legal advice to Movant – was protected by attorney-client privilege, was highly prejudicial, and should be excluded. (Def. Resp. to Gov't Mot.

on Townsend at 1-9, ECF No. 101).  As stated by Movant, counsel vigorously objected at trial to the admission of the Townsend memorandum and testimony.  Br. of Appellant Mackey at 38 n.6, <u>Jenkins</u>, 573 F. App'x 863 (No. 12-15897-FF), 2013 WL 4040925.  The Court ruled that the memorandum would be admitted into evidence for the limited purpose of showing that Movant possessed the necessary intent to defraud the alleged victims in this case.  (Order of Feb. 7, 2012, at 19, ECF No. 112).  The Court noted that Movant had not argued "that the disclosure of the hard drive without review was not authorized by [Movant]" and that, further, Movant had failed to show that he had taken reasonable steps to prevent disclosure in that he conceded that he and his former counsel took no steps to prevent disclosure.  (<u>Id.</u> at 12).

On direct appeal, counsel argued that the memorandum and related testimony should not have been admitted.  Br. of Appellant Mackey at 35-39.  The Eleventh Circuit Court of Appeals reviewed the matter and determined as follows –

> At trial, the government introduced a document created by attorney Robert Townsend in which Townsend opined on the legality of the Loan Warranty Program.  [Movant] and Jensen contend that the memorandum was protected by the attorney-client privilege and should not have been admitted against [Movant].  Even if admissible, they challenge its relevancy and argue that it was so prejudicial that the court should have excluded it under Rule 403 of the Federal Rules of Evidence.  They also contend that the government improperly used the evidence to establish the ultimate issue and that it was improper for the district court to allow

22

the memorandum to be presented to the jury through Townsend's live testimony.

We need not determine whether the Townsend memorandum was protected by the attorney-client privilege because, even if it was, [Movant] waived the privilege.  Mackey's counsel asserted a good-faith advice of counsel defense in his opening statement:

> And most of these deals, if not all of them, had one thing in common, and that is that they all either had a lawyer or a Ph.D. who was involved in the transaction and who was, you know, explaining to [Movant] how this was fine and how this was going to work.

By claiming that [Movant] lacked intent to defraud because attorneys told him that Wealth Enhancement Club transactions were legal, [Movant] waived the attorney-client privilege with respect to communications with counsel concerning its legality. . . .

Because the Townsend memorandum evaluated only the legality of the Loan Warranty Program, [Movant] and Jensen contend that it was not relevant to the Wealth Enhancement Club. We disagree. The Townsend memorandum warned that the high-yield investments ASM was investing in and relying on to generate returns for the Loan Warranty Program were probably Ponzi schemes.  It also warned that law enforcement entities would likely view the Loan Warranty Program itself as a Ponzi scheme because ASM was offering extremely high rates of return and was relying on high-yield investments as the basis for generating those returns. The Wealth Enhancement Club's business model was similar-it offered extremely high rates of return and, in part, relied on high-yield investments as the basis for generating returns. Because [Movant] used this business model for the Wealth Enhancement Club after receiving and reviewing the Townsend memorandum, the district court was well within its discretion to find that it was relevant to [Movant's] intent regarding the Wealth Enhancement Club.

23

We also cannot say that the district court abused its discretion in determining that the danger of unfair prejudice did not substantially outweigh the probative value of the Townsend memorandum. . . . [Movant's] intent was the lynchpin of his defense, and this evidence was highly probative of that intent.  The district court admitted it only against [Movant] and for the limited purpose of determining his intent. The court provided a limiting instruction during Townsend's testimony and on two other occasions during trial. Irrelevant portions of the Townsend memorandum were redacted. . . . Accordingly, we affirm the district court's decision to admit the Townsend memo.

Finally, viewing the record as a whole, we cannot say that allowing Townsend to testify or the manner in which the government used the Townsend memorandum warrants a new trial.  Other than a few background questions, Townsend's testimony was limited to reading portions of the document admitted into evidence.  And, in the context of the entire trial, the government did not improperly use this piece of evidence.  Although the Townsend memorandum advised that law enforcement officials would likely view the Loan Warranty Program as a Ponzi scheme, it did not opine on the legality of the Wealth Enhancement Club. Nor did the memorandum directly opine on [Movant's] and Jensen's guilt or innocence. The government's questions to [Movant] on his decision to invest Wealth Enhancement Club capital in third-party high-yield investment programs after reviewing Townsend's advice were appropriate and relevant to [Movant's] intent. In addition, the district court properly instructed the jury regarding consideration of this evidence. We presume the jury followed the court's instructions. . . .

Jensen, 573 F. App'x at 870-72 (citations omitted).

Movant now argues that counsel was ineffective for failing to exclude the Townsend memorandum and failing properly to challenge it based on attorney-client

24

privilege and based on Movant's objection at the time he turned over his computer. (Mov't Mem. at 11-12). Movant appears to refer to Exhibit D, a copy of a 2009 evidence receipt for a Compaq Presario, issued by the State of New York, Office of the Attorney General and signed by Movant, with the statement "under objections to review[.]" (Mov't Ex. D, ECF No. 310-2).

Respondent argues, among other things, that this ground fails because counsel did object and because Movant cannot collaterally relitigate an issue decided on direct appeal. (Resp't Resp. at 22).

In reply, Movant repeats his prior argument on the 2009 computer receipt, which he asserts that he did not know about until late 2014, and argues that the Eleventh Circuit Court of Appeals erred in deciding the issue based on waiver of the privilege. (Mov't Reply at 24-26).

This claim fails because, as admitted by Movant, counsel vigorously objected at trial to the admission of the Townsend memorandum and testimony. To the extent that counsel failed to raise a particular argument based on the 2009 computer receipt/notation, Movant does not demonstrate prejudice. Even if counsel had raised the issue of Movant's notation on the receipt, there is still a lack of evidence that Movant and his counsel took reasonable steps to prevent disclosure. As determined

by the Eleventh Circuit Court of Appeals, Movant waived the attorney-client privilege by asserting a good-faith advice of counsel defense in his opening statement, and the computer receipt does not change that determination.

### d.    Counsel's Failure to Cross-Examine Townsend on his Book

Townsend, who wrote the Townsend memorandum, also wrote a book entitled Lawyer's Guide:  Advising Clients on High Yield Investment Programs and Ponzi Schemes.  (Mov't Ex. G, ECF No. 310-2).  Movant suggests that he should not be held liable because he also was a victim of fraud and argues that counsel was ineffective for failing to cross-examine Townsend on his book, Chapter Three, page fourteen, the portion of the book titled Don't Underestimate the Ability of the Fraudsters.  (Mov't Mem. at 14).  The portion of the book to which Movant refers discusses a meeting at a Barclays Bank in which an investment promoter met the investor in the bank lobby, falsely represented his cohort to be a banking official, and took the investor to an office that had been falsely labeled for the purpose of the meeting.  (Mov't Ex. G at 14-15). Respondent argues that Movant fails to show that he was prejudiced by counsel's decision not to cross-examine Townsend on his book.  (Resp't Resp. at 30).

AO 72A
(Rev.8/82)

Movant does not cite to any evidence showing that he was ever in a situation comparable to the situation in the book section to which he refers, and the Court declines finding that no competent counsel would have failed to cross-examine Townsend in regard to that section or that Movant's counsel was deficient.

> **e.** **Counsel's Failure to Exclude Emails on ASM's Unrelated Business Activities (Emails Between Movant and Deceased Co-Conspirator McKinnon)**

At trial, counsel objected that statements by deceased co-conspirator McKinnon were hearsay but acknowledged that they could be admitted to show state of mind for the witness then testifying.  (See Trial Tr., Vol. III at 635, 650-51, 657-63, ECF No. 215).  The court allowed the statements, with limiting instructions.  (See Order of Aug. 8, 2012, at 30, ECF No. 177).  During the motion-for-new-trial proceedings, Movant, *pro se*, argued that the Court had erred in allowing hearsay testimony on McKinnon's statements. (See id. at 29-30).  The Court addressed Movant's *pro se* argument and reiterated that the statements were admissible under Fed. R. Evid. 801(c) for the non-hearsay purpose as limited by the Court's instructions.  (Id. at 30-31).

Movant now argues that counsel was ineffective for failing to exclude emails between deceased co-conspirator McKinnon and Movant, which emails pertained to ASM business activities that were unrelated to his charged crimes, and argues that the

27

admission violated his confrontation rights as McKinnon was deceased.  (Mov't Mem. at 14-15).  Respondent argues, among other things, that counsel *did* object and that counsel is not ineffective for presenting an objection that the court overrules.  (Resp't Resp. at 33).  In reply, Movant repeats his prior argument and asserts that McKinnon was not a co-conspirator under Fed. R. Evid. 801(d)(2)(e) and that the emails should not have been admitted under Fed. R. Evid. 801(c).  (Mov't Reply at 28-29).

Movant fails to show that counsel was deficient when counsel objected that McKinnon's statements were hearsay but could be admitted for non-hearsay purposes.  See United States v. Fernandez, 392 F. App'x 743, 746 (11th Cir. 2010) ("Under the evidentiary hearsay rules, certain out-of-court statements can be admitted as non-hearsay evidence if they are offered, not for the truth of the assertions therein, but to explain a witness's state of mind and subsequent actions.").  Movant's argument in reply fails because whether or not the emails could be admitted under Rule 801(d)(2)(e) as the statement of a co-conspirator is not relevant to whether the emails were admissible as non-hearsay evidence.

28

### f.   **Counsel's Failure to File Certain Pretrial Motions**

Movant argues that counsel was ineffective for failing to file a motion for grand jury testimony – to establish that erroneous and false information was provided to the grand jury, a motion to dismiss based on prosecutorial misconduct in misleading the grand jury, a motion to dismiss based on prosecutorial misconduct in failing to turn over exculpatory evidence (as discussed in ground five), and a motion in limine to exclude the Townsend memorandum and the McKinnon emails. (Mov't Mem. at 17).

Respondent argues that Movant has not shown entitlement to grand jury testimony or prosecutorial misconduct. (Resp't Resp. at 34-35). Respondent further argues that Movant fails to show that counsel was ineffective in regard to the memorandum or emails. (Id. at 36).

Movant's conclusory assertion of erroneous and false information provided to the grand jury is insufficient to show any entitlement to grand jury information such that his counsel was ineffective for failing to file a motion for grand jury testimony or a motion to dismiss based on prosecutorial misconduct before the grand jury. See In re Disclosure of Evidence Taken Before Special Grand Jury Convened on May 8, 1978, 650 F.2d 599, 600 (5th Cir.), amended, 662 F.2d 362 (5th Cir. 1981) (affirming district court's denial of motion for disclosure that was based on conclusory

29

allegations); <u>Nance v. United States</u>, No. 3:08-CR-75-J-34JRK, 2013 WL 12201263, at *11 (M.D. Fla. July 17, 2013) (finding that defendant – who provided "not one reasonably-specific and non-conclusory fact or form of proof to support his allegations of grand jury irregularities" – failed to overcome resumption of regularity in grand jury proceedings); <u>United States v. Morgan</u>, 845 F. Supp. 934, 941 (D. Conn. 1994) ("[There is a] strong presumption of regularity in grand jury proceedings, a presumption that cannot be outweighed by conclusory or speculative allegations of misconduct.").  Further, as discussed below, <u>see infra</u> I. C. 5., ground five fails, and Movant fails to show that counsel was ineffective for failing to seek dismissal based on the issues raised in ground five.  Additionally, Movant fails to show that counsel was ineffective in regard to the Townsend memorandum or the McKinnon emails, as discussed above.  <u>See supra</u> I. C. 1. c. and e.

### g.   Counsel's Failure to Call Gerald M. Shaw and Ray Benton as Witnesses

Movant argues that counsel was ineffective for failing to call Shaw or Benton as witnesses.  (Mov't Mem. at 16-18).  Respondent argues that Movant fails to show prejudice.  (Resp't Resp. at 37-38).

Movant's argument that counsel was ineffective for failing to obtain testimony from Shaw or Benton fails because Movant makes no viable proffer in regard to testimony by either Shaw or Benton.  See Hill, 175 F.3d at 923 (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath, 234 F.3d at 552 n.12 (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

### h.   Counsel's Failure to call FBI agent Dan Whalen as a Witness

Movant also argues that counsel was ineffective for failing to call Whalen as a witness. (Mov't Mem. at 18).  Movant's argument in regard to Whalen also fails in the absence of any viable proffer.  See Hill, 175 F.3d at 923; Gilreath, 234 F.3d at 552 n.12.

### i.   Counsel's Failure to Move Properly for a Judgment of Acquittal

At the end of the government's case, Movant moved for a directed verdict on the grounds that there was insufficient evidence to show a scheme to defraud because Movant thought his actions were proper under the agreements. (Trial Tr., Vol. IV at 1107-19).  At the end of trial, Movant renewed his motion for a directed verdict. (Trial

31

Tr., Vol. VII at 1740).  The Court found that there was sufficient evidence to go to the jury and denied the motion.  (Id.).

Movant argues that counsel was ineffective in failing to seek a directed verdict based on Howey, 328 U.S. 293, lack of evidence of materiality and intent to defraud, lack of evidence that the co-mingled money in ASM accounts resulted from WEC fraud, and lack of evidence to support the summary charts.  (Mov't Mot. at 18). Respondent argues that the Howey argument lacks merit, that the Eleventh Circuit found that there was overwhelming evidence of Movant's intent to defraud, that his co-mingled argument is gibberish, and that the summary charts were supported by the evidence.  (Resp't Resp. at 39-41).

Movant replies that the co-mingling of funds was important to the jury (as shown by a post-trial interview with a juror), which supports his argument that the government should have proven which funds were legal and which funds were illegal. (Mov't Reply at 30).

Movant's attempt to show that counsel was ineffective on the motion for a directed verdict fails (1) because Movant stipulated to the admittance of the summary

32

charts,[22] (2) because counsel *did* argue that Movant lacked an intent to defraud, (3) because Movant presents no cogent argument on materiality or co-mingled money that counsel allegedly should have presented in seeking a directed verdict that would have had a reasonable chance of convincing the Court that the matter should not be submitted to the jury, (see Mov't Mem. at 18), and (4) his claim based on Howey fails, as discussed further below in ground seven, see infra I. C. 7.

### 2.    Insufficient Evidence to Support Movant's Convictions

As indicated above, Movant and Jensen were charged with attempt and conspiracy to commit fraud, along with committing and aiding and abetting wire and mail fraud.   (Superseding Indictment).   On direct appeal, Movant challenged the admission of evidence pertaining to the Loan Warranty Program, which was not charged in the indictment.   Jensen, 573 F. App'x at 869.   The Eleventh Circuit found that the evidence was admissible and that, further, "any error was harmless since there was overwhelming evidence relating directly to the Wealth Enhancement Club to establish [Movant's] intent." Id. at 870.   Additionally, the Eleventh Circuit concluded that the evidence presented at trial was more than sufficient to support Jensen's

---

[22]The separate issue of whether counsel was ineffective for stipulating to the admittance of the summary charts is addressed earlier.   See supra I. C. 1. a.

convictions and that the district court at sentencing properly denied Jensen a minor-role reduction and properly applied an organizer/leader enhancement to Movant.  Id. at 873-74, 877.

Movant argues that the evidence to support his convictions is insufficient because it is based on the summary charts, because there was no evidence of intent to defraud under the test in Howey, because there was no specific evidence of any wire or mail transactions and no wires or mail were sent before investors sent their money to ASM, and because the government failed to prove materiality.  (Mov't Br. at 18, 20).  Movant states that he did not raise the issue on direct appeal because his appellate counsel was ineffective.  (Mot. to Vacate at 6).

Respondent argues that Movant failed to challenge the sufficiency of the evidence on direct appeal and may not now do so collaterally.  (Resp't Resp. at 42-43).  Respondent further argues that such claim on direct would have been unsuccessful when Jensen and Movant were charged and convicted on the same counts, the Eleventh Circuit found that there was more than sufficient evidence to support Jensen's convictions, and Movant was clearly more culpable than Jensen in that he was found to be the leader and organizer.  (Id. at 42-43).

34

The elements for mail and wire fraud, the crimes on which Movant was charged, are: "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). A scheme to defraud under §§ 1341 and 1343 requires a material misrepresentation, and "[a] misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." Bradley v. United States, 676 F. App'x 895, 899 (11th Cir.) (quoting Maxwell, 579 F.3d at 1299) (internal quotation marks omitted)), pet. for cert. docketed, No. 17-282 (U.S. Aug 23, 2017).

For purposes of overcoming a procedural default – for this ground and other defaulted grounds below – claims of ineffective assistance of appellate counsel are governed by the Strickland test. Owen v. Fla. Dep't of Corr., 686 F.3d 1181, 1202 (11th Cir. 2012). To succeed on a claim of ineffective assistance of appellate counsel, the movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had not performed deficiently, there is a reasonable probability that the appellate outcome would have been favorable to the movant. See Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011). On appeal, counsel must be "highly selective about the issues to be argued . . . ." Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir.

35

2001) (quoting <u>United States v. Battle</u>, 163 F.3d 1, 1 (11th Cir. 1998)) (internal quotation marks omitted).  Reasonable appellate counsel may "cho[o]se to pursue the claims he fe[els are] most likely to prevail and winnow out the arguments he th[inks are] less persuasive."  <u>Id.</u>  "[T]he Sixth Amendment does not require appellate advocates to raise every non-frivolous issue" and "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious."  <u>Heath v. Jones</u>, 941 F.2d 1126, 1130-31 (11th Cir.1991) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983)).  Absent a showing "regarding the effect, if any, that a different [appellate] brief would have had on the outcome of proceedings[,]" under <u>Strickland</u>, there is no ineffective assistance of appellate counsel.  <u>Johnson</u>, 256 F.3d at 1188.

Movant failed to challenge the sufficiency of the evidence on direct appeal, and the claim is now procedurally defaulted.  Further, Movant does not overcome his default by showing that appellate counsel was ineffective.  Had appellate counsel asserted that the evidence was insufficient based on the summary charts and <u>Howey</u>, there is no reasonable probability that the result on appeal would have been different.  As already determined by the Eleventh Circuit, Movant stipulated to the admission of the summary charts, and any sufficiency of the evidence claim based on a challenge to the summary charts would have failed.  <u>See Jensen</u>, 573 F. App'x at 869.  As

36

discussed below, <u>Howey</u> does not apply to Movant's convictions and an insufficiency claim based thereon would not have succeeded.  <u>See infra</u> I. C. 7.

Further, the Court cannot find that no reasonable appellate counsel would have failed to challenge the sufficiency of the evidence against Movant based on materiality. <u>See</u> <u>Jensen</u>, 573 F. App'x at 868 (reviewing the numerous fraudulent misrepresentations and stating, among other things, "[t]here were significant disparities between the balances reflected in ASM's bank records and what [Movant] and Jensen were telling the investors about those balances").  Further in light of Movant and Jensen being charged with both committing and aiding/abetting fraud, the more than sufficient evidence to support Jensen's convictions, and Movant's leadership role, the Court cannot find that no reasonable appellate counsel would have failed to challenge the sufficiency of the evidence against Movant based on the alleged lack of evidence of wire or mail transactions and the alleged lack of evidence of wire or mail transactions before investors sent in their funds.[23]

---

[23]<u>See</u> <u>Jensen</u>, 573 F. App'x at 868 ("Bank records establish over $500,000 in transfers from ASM accounts directly to Jensen and [Movant] . . . ."); (<u>see also</u> Trial Tr. Vol. II at 361-98 (Marinetta McKinnon – who assisted her husband, an ASM intermediary whose job it was to get clients to invest in ASM – testifying as to use of interstate mail, wire transfers, email, and conference calls for ASM business)).

AO 72A
(Rev.8/82)

###       3.      Insufficient Evidence to Support Movant's Sentence

On direct appeal, Movant challenged his sentencing enhancements for loss amount, number of victims, violation of securities law under U.S.S.G. 2B1.1(b)(18)(A)(iii),[24] sophisticated means, and role in the offense.  Br. of Appellant Mackey at 57-62.  The Eleventh Circuit Court of Appeals found no error.  Jensen, 573 F. App'x at 875-77.

Movant asserts that the government failed to provide a preponderance of evidence to support the sentencing enhancements for loss amount, number of victims, violation of securities law, sophisticated means, and role in the offense.  (Mov't Mem. at 21-22).  Respondent argues that Movant litigated these claims on direct appeal and cannot relitigate them under § 2255.  (Resp't Resp. at 43-44).

Respondent correctly states that this matter may not be collaterally relitigated. See Rozier, 701 F.3d at 684.

###       4.      Court Error in Imposing a Substantively Unreasonable Sentence

At sentencing, the Court found that Movant's guidelines range was 324 to 405 months.  (Sentencing Tr. at 154).  The Court found as follows –

--------------------------------------------------

[24]It appears that the enhancement was under U.S.S.G. § 2B1.1(b)(17)(A)(iii) (2011).

I have done a number of these cases.  What is really different about this case is this. . . . I have never had this many victims tell me what you did to them.  I never had this many people talk about the havoc that you played in their life, including statements that your own accountant said about when people are financially distressed, that they have heart problems, they commit suicide.  That kind of tragedy is right in the middle of all of this.

The human devastation that you caused is represented by every single person that took the time to write these pieces of paper about what the impact was of what you did.  Honest, hard working, generally not very wealthy, people that had a little bit of life savings, exactly the sort of people that you targeted.

And even if at some point you realized that the investments weren't very good, you never went back to them – because this is what honest people do.  Honest people say this is not working out.  I know you are going to hate this, but the money that you sent to me is lost.

Not you. The money that you sent to me is fine. I want some more. Invest again, another hundred thousand, another hundred fifty thousand. And by the way, let me send you a statement, you and your cohort, Ms. Jensen, saying be satisfied because look how well we are doing for you. All of which was a fiction – I'm sorry, the wrong word: A fraud.

This is what some of the people have said:

I lost my home. I have been extremely depressed.  I had to move my family and four children into the bedroom of a relative's home.

I used my entire retirement money to keep the bank from foreclosing on my home.

39

I have no choice but to work to support at this stage of my life. Getting up and going to work five to six days a week is quite difficult, but I have no choice because I'm old.

Some nights I cry myself to sleep when I think about my life now. I had a few of my children pull their money, and they invested what little savings they had. I feel awful.

It has affected us very much, emotionally, financially. We had very little means. My son is disabled. My husband is retired, and he's disabled. It was a financial burden on our family, our friends and our neighbors.

First and foremost, my husband was already disabled at the time that we were urged to invest in ASM. He hoped it would help us financially. ASM affected my husband tremendously. He feels responsible for everything that happened. The stress and burden financially has affected him. On December of 2008 it ends up with him suffering a stroke.

Our life as a family was turned upside down. It's a long process of recovery. My two sons, one of them has quit his job in order to care for his dad. My husband died last August.

Presently I'm taking antihypertensive medications, having sleepless nights. I've lost my best friend of 17 years. She encouraged me not to invest.

We ended up having to sell our dream house after being promised on numerous occasions by you that your money was on its way. I was also a stay-at-home mother with three small children at the time, and I had to return to work.

That's a small fraction of these, and they all say the same. You devastated families. You created health problems. You have ruined

40

people's lives.  You denied them and stole their retirement.  And steal is exactly what you did.

There are two factors – two sets of factors under 3553. One is what is the crime that you committed.  And these victims have told us the crime that you have committed, the evidence told us the crime that you have committed, the crime that you committed that you to this day deny. That tells us a lot about your character.

The public has a right for you to be held accountable for what you did. . . .

. . .

It's a serious offense.  You know, there are too many people – there are a lot of prosecutions these days because of people like you out preying on investors, and that's got to stop.  And so a sentence has to deter others.  It has to be just, but it has to reflect the seriousness of what you did. And these witnesses have told us, these victims have said, they have spoken about how serious your conduct has been.

(Id. at 175-78).  The Court imposed a total 324-month term of imprisonment, at the

low end of the guidelines range.  (Id. at 179).

Movant now argues that the Court imposed a sentence that was substantively

unreasonable because it is greater than sentences imposed for similar fraud and was

greater than necessary to fulfill sentencing goals.  (Mov't Mem. at 22).  In support,

Movant refers to the sentence of Tyco's CEO, who is eligible for parole after eight and

half years for a 150-million dollar fraud, and the HealthSouth case, which resulted in

sentences of eight and five years for a 2.7-billion dollar loss.[25]  (Id.).  Movant states that he did not raise the issue on direct appeal because appellate counsel was ineffective.  (Am. Mot. to Vacate at 9).

Respondent argues that, had appellate counsel raised this issue, it likely would not have changed the outcome because the district court did not abuse its discretion in considering the need for deterrence and the fact that Movant had targeted honest, hard working, and not very wealthy people; devastated families; created health problems; ruined people's lives; and stolen peoples' retirement.  (Resp't Resp. at 45).

The federal court is required to impose a sentence that is "sufficient, but not greater than necessary," to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

---

[25]In referring to the Tyco fraud, it appears that Movant refers to the conviction of L. Dennis Kozlowski, whose sentence was imposed under state, not federal, law. See People v. Kozlowski, 898 N.E.2d 891 (2008). Movant does not identify a particular criminal case or defendant in regard to the HealthSouth fraud case. Movant's conclusory references to these two fraud cases is insufficient to bring the reasonableness of his sentence into question.  See United States v. Cox, 851 F.3d 113, 127 (1st Cir. 2017) (stating that it is generally not persuasive to simply point to the sentences of unrelated defendants sentenced by different judges).

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). Additionally, the court should consider "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the kinds of sentences available," the applicable Guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. Id. § 3553(a)(1), (3)-(7).

"'The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,]' and '[w]e will not substitute our judgment in weighing the relevant factors.'" United States v. Amedeo, 487 F.3d 823, 832 (2007) (quoting United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006)). "[T]here is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting United States v. Talley, 431 F.3d 784, 788 (2005)) (internal quotation marks omitted).

Movant did not raise this claim on direct appeal, and it is procedurally defaulted. Further, Movant does not overcome his default by showing that appellate counsel was

43

ineffective on this issue.  Based on the Court's strongly worded concerns based on §

3553 factors, the Court's discretion to weigh those factors, and the general expectation

that a within-guidelines sentence is reasonable, the undersigned cannot find that no

reasonable appellate counsel would have failed to challenge the reasonableness of

Movant's sentence on direct appeal.

5. **Prosecutorial Misconduct in Failing to Disclose Exculpatory Evidence**

Movant argues that the prosecution committed misconduct in failing to disclose

(1) information that Movant was victim of fraud by Benton and Shaw, (2) WEC

agreements that showed Movant fulfilled his contractual agreements and that the

investors assumed the risk of loss, (3) information that the American Communications

Network (ACN) (from which Movant had learned of an investment opportunity) had

been endorsed by now President Donald Trump,[26] and (4) a notation by Movant that

he turned over his computer "under objection for review."[27]  (Mov't Mem. at 23); see

---

[26]Movant has provided Exhibit E, a July 2012 copy of the magazine SUCCESS FROM HOME, which reviews ACN as being endorsed by now President Donald Trump.  (Mov't Ex. E, ECF No. 310-2).

[27]As stated earlier, Movant's Exhibit D is a copy of a 2009 evidence receipt for a Compaq Presario, issued by the State of New York, Office of the Attorney General and signed by Movant, with the statement "under objections to review[.]"  (Mov't Ex. D).

44

also Br. of Appellant Mackey at 26 (discussing ACN).  Movant states that these issues were not raised on direct appeal because appellate counsel was ineffective.  (Am. Mot. to Vacate at 9).

Respondent argues that this claim is procedurally barred and that Movant presents no viable Brady[28] claim that appellate counsel was ineffective for failing to raise on appeal and fails to overcome the bar by showing that appellate counsel was ineffective.  (Resp't Resp. at 46-49).

To establish a Brady claim, a movant must "prove that (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material."  Davis v. Terry, 465 F.3d 1249, 1254 (11th Cir. 2006).

Movant did not raise a Brady claim on direct appeal, and such claim is now procedurally defaulted.  Further, Movant does not overcome his default by showing that appellate counsel was deficient for failing to raise a Brady claim, which requires

---

[28]Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

AO 72A
(Rev.8/82)

a showing that Movant did not possess the evidence and could not have obtained it with reasonable diligence. First, information that Movant was a victim of fraud by Benton and Shaw was a matter of which Movant was aware at trial. See infra I. C. 7. Second, Movant himself reasonably should have been aware at trial of the WEC agreements issued by his own company. Third, the magazine article endorsing ACN is dated after Movant's trial, and Movant does not show any reason why the government would have had foreknowledge of (or a duty to inform Movant of) the endorsement before its publication date. Fourth, Movant himself reasonably should have been aware of his own notation on the computer receipt. This ground fails.

### 6.    Egregious Prosecutorial Misconduct

On direct appeal, Movant asserted prosecutorial misconduct and argued that the government had (1) misrepresented evidence by using the summary charts, (2) included unrelated investments and money in the WEC monies, (3) misrepresented that the underlying agreements were in evidence, (4) given misleading statements about the income that ASM had included on the 1099s, (5) argued without evidence that Movant personally profited at the expense of investors, and (6) failed to differentiate the monies in the ASM account. Br. of Appellant Mackey at 21- 31. Movant also argued that the court erred in admitting the Townsend memorandum and

46

allowing testimony thereon and that the government's use of the memorandum was improper.  (Id. at 35-51).  As stated elsewhere, the Eleventh Circuit Court of Appeals rejected Movant's challenges to his conviction and affirmed the judgment against him. Jensen, 573 F. App'x at 866, 877.

In the current proceedings, Movant provides a list of seventeen instances of prosecutorial misconduct which he asserts rendered his trial fundamentally unfair – prosecutorial misconduct in (1) presenting the summary charts; (2) presenting the emails and related testimony from McKinnon; (3) making misleading statements about the income of ASM and failing to distinguish between legitimate and illegitimate transactions; (4) presenting false testimony by Agent Shawn Murnaham that there was no evidence of profit or investment; (5) misrepresenting the contents of the agreements to the court in order to get in testimony from investors that contradicted the agreements; (6) knowingly soliciting false testimony that Movant used 1099 tax forms to solicit new investors, when only ten were given to investors for which it was legally required; (7) soliciting false and misleading testimony that Movant did not tell investors about every aspect of the program, while the contract dictated that he was required to do so; (8) knowingly soliciting false testimony that Movant promised the investors a ten to twenty percent profit, while the agreements clearly stated that there

were no guarantees; (9) asserting that Movant had recruited investors, when there was no solicitation by Movant and when Movant was not aware of the meetings between the investors and McKinnon; (10) knowingly soliciting false testimony that Movant used the investor funds to pay intermediaries without permission, when the agreements clearly and expressly state that expenses and intermediary fees were to be paid from the investor funds; (11) making misleading statements about the income ASM had included on the 1099s; (12) arguing without any supporting evidence that Movant personally profited at the expense of investors; (13) admitting the Townsend memorandum into evidence knowing that it was protected by the attorney-client privilege and was not relevant; (14) using the Townsend memorandum and accompanying testimony to establish the ultimate issue; (15) ending the investigation without investigating any of the people who accepted money from ASM, even though there were numerous indications that these people were the ones perpetrating fraud and not Movant; (16) refusing to turn over the WEC agreements even after being ordered to do so; and (17) knowingly soliciting false testimony from Davis and Murnaham. (Mov't Mem. at 24-25). Movant states that he did not raise these matters on direct appeal because appellate counsel was ineffective. (Am. Mot. to Vacate at 9).

48

Respondent argues (1) that Movant raised prosecutorial misconduct on direct appeal and cannot relitigate those claims, (2) that he cannot relitigate the issue of the summary charts (which was resolved on appeal) by raising it as a claim of prosecutorial misconduct, and (3) that, to the extent he raises prosecutorial misconduct claims that he did not raise on direct appeal, he fails to show that appellate counsel was ineffective because he does not show that any misconduct occurred.  (Resp't Resp. at 49-50).

"Prosecutorial misconduct exists where the remarks are improper and where they prejudicially affect the substantial rights of the defendant."  United States v. Gonzalez, 833 F.2d 1464, 1466 (11th Cir. 1987).  Misconduct prejudicially affects a defendant's substantial rights when it "'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.' . . . In deciding whether the conduct in question rises to that level, we determine whether there is a reasonable probability that, but for the conduct, the outcome of the trial would have been different."  Sexton v. Howard, 55 F.3d 1557, 1559 (11th Cir. 1995) (quoting United States v. Eyster, 948 F.2d 1196, 1206-07 (11th Cir.1991)).  Conclusory assertions are insufficient to show prosecutorial misconduct.  United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)

49

(affirming rejection of list of conclusory and unsubstantiated instances of prosecutorial misconduct).

Movant's claims fail.  Claims (1), (3), (11) through (14) fail because they were raised and addressed on direct appeal.  See Rozier, 701 F.3d at 684.  To the extent that Movant did not clearly raise the additional claims of prosecutorial misconduct on direct appeal, they are procedurally defaulted, and Movant's conclusory list of alleged instances of misconduct fails to show a claim of misconduct that affected his substantial rights and that no competent appellate counsel would have failed to raise. See Jones, 614 F.2d at 82.

### 7.    Court Error in Denying Motion for Directed Verdict

As indicated earlier, Movant's offense level was enhanced four levels because his offense involved "a violation of securities law and, at the time of the offense, the defendant was . . . (iii) an investment adviser, or a person associated with an investment adviser[.]"  U.S.S.G. § 2B1.1(b)(17)(A)(iii) (2011).  On direct appeal, Movant challenged his sentence and argued (1) that the enhancement required a violation of securities law; (2) that securities law, as defined by the guidelines, was not at issue in the case; and (3) that there was not an adequate basis for the enhancement. Br. of Appellant Mackey at 60-61.  The Eleventh Circuit found as follows –

50

> [Movant's] and Jensen's conduct . . . constitutes a violation of securities laws.  Because [Movant] exercised control over how (and whether) the Wealth Enhancement Club investors' funds were invested, [Movant] is considered to have provided investment advice for purposes of the Investment Advisers Act of 1940 and the investment advisor enhancement. . . . Jensen, as the vice president of ASM, exercised control over investors' funds, and acted in more than just a ministerial capacity. The district court did not clearly err in applying this 4-level enhancement.

Jensen, 573 F. App'x at 876-77.

Movant now asserts that the Court erred in denying his motion for a directed verdict without applying the Howey test, under which Movant contends that he was not liable because he was not an investment-advisor. (Mov't Mem. at 15-26). Movant states that he did not raise the issue on direct appeal because appellate counsel was ineffective. (Am. Mot. to Vacate at 9).

Respondent argues this claim fails because the Eleventh Circuit found that Movant exercised control over how and whether the investors funds were invested and because Howey is not applicable and counsel was not ineffective for failing to pursue a meritless claim. (Resp't Resp. at 51-52). In reply, Movant argues that his sentencing enhancement for a securities violation shows that Howey was applicable. (Mov't Reply at 29).[29]

---

[29]Movant has thrown in a statement that the jury should have received a third-party jury charge based on Howey. (Mov't Resp. at 30).  The statement does not

51

Under <u>Howey</u>, an investment contract for the purposes of the Securities Act requires an "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." <u>Bamert v. Pulte Home Corp.</u>, 445 F. App'x 256, 262 (11th Cir. 2011) (quoting <u>SEC v. Unique Fin. Concepts, Inc.</u>, 196 F.3d 1195, 1199 (11th Cir.1999)) (internal quotation marks omitted). The <u>Howey</u> test is *only* used to determine whether an instrument is an investment contract for purposes of the Securities Act. <u>Calderon-Serra v. Wilmington Tr. Co.</u>, 715 F.3d 14, 19 (1st Cir. 2013) (citing <u>SEC v. Edwards</u>, 540 U.S. 389, 393 (2004)).

Whether the Court erred in denying Movant's motion for a directed verdict is procedurally defaulted, and Movant has not overcome his default. Had appellate counsel argued that the Court erred in failing to direct a verdict in Movant's favor based on <u>Howey</u> before sentencing, there is no reasonable probability that the result on appeal would have changed. Movant was not charged with any violation under the securities act, and the <u>Howey</u> test would have been inapplicable in determining Movant's guilt or innocence for the crimes on which he was charged. Further, the

---

change the fact that ground seven fails.

sentencing determination, which was resolved by the Eleventh Circuit Court of Appeals, cannot be revisited here.

### 8.    Court Error in Charging Jury

After the close of evidence, the Court instructed the jury on materiality. (Trial Tr. Jury Charge at 9-12, ECF No. 176).

Movant argues that the Court erred in failing to charge the jury on materiality, an essential element of the offense. (Mov't Mem. at 26). Movant states that he did not raise the issue on direct appeal because appellate counsel was ineffective. (Am. Mot. to Vacate at 9). Respondent argues that this claim fails as factually incorrect. (Resp't Resp. at 53). The Court agrees with Respondent. This ground fails as factually incorrect.

### 9.    Court Error in Regard to Certain Investor Testimony

On direct appeal, Movant argued that the Court erred in not allowing him to cross-examine investors on the terms of the investment agreements/contracts when it allowed the government to elicit from the investors what there expectations were. Br. of Appellant Mackey at 44-52. The Eleventh Circuit found as follows –

> [Movant] and Jensen argue that the district court erred by not allowing them to cross-examine the investors on their understanding of the risk-disclosure and best efforts provisions in the joint venture agreements.

They claim that the limitation violated their Sixth Amendment right to confront witnesses against them and that it resulted in the exclusion of crucial evidence necessary to establish a valid defense.  We are not persuaded by either argument.

. . .

[Movant's] counsel extensively reviewed every risk-disclosure and best-efforts provision in the joint venture agreements with each investor. The investors were cross-examined regarding whether they had any interactions with [Movant] and Jensen before signing the agreement; they each testified that they spoke only to the intermediary and, in some cases, other ASM investors and that neither [Movant] nor Jensen made any direct representations to them about the Wealth Enhancement Club or the agreement.  On this record, we cannot say that the jury would have had a significantly different impression of the investors' credibility had defense counsel questioned the investors on their understanding of the best-efforts and risk-disclosure provisions.

. . . [Q]uestions regarding the investors' subjective understanding of the risk-disclosure and best-efforts provisions were not crucial or necessary for [Movant] and Jensen to establish a valid defense—the focus of these criminal charges was whether [Movant] and Jensen intended to defraud ASM's investors, not on whether the investors believed they were getting involved in a legitimate but risky investment. . . .

Regardless of the excluded line of questioning, [Movant] and Jensen were able to present evidence of their good faith defense.  [Movant] testified about his understanding of the provisions in the joint venture agreement, including the risk-disclosure and best-efforts provisions. He testified that he made the risk known to "his" people and that he would not sign a contract that guaranteed a specific high rate of return.  [Movant] and Jensen's counsel were also free to explore whether [Movant] or Jensen directly made any representations about ASM or the Wealth Enhancement Club to each investor before the investor executed the joint venture agreement.  As a result, we conclude that [Movant] and Jensen's

54

right to a fair trial was not violated and that they were not prevented from presenting their defenses.

Jensen, 573 F. App'x at 872-73.

Movant argues that the Court erred in allowing investor testimony that contradicted the written contracts and in not allowing Movant to impeach them with the contracts. (Mov't Mem. at 26-27). Movant states that he did not raise the issue on direct appeal because appellate counsel was ineffective. (Am. Mot. to Vacate at 9). Respondent argues that this issue was decided against Movant on direct appeal and that he may not collaterally relitigate the matter. (Resp't Resp. at 53-54). The Eleventh Circuit Court of Appeals has ruled on this matter, and it will not be revisited. See Rozier, 701 F.3d at 684.

### 10. Court Error in Admitting Townsend Memorandum

On direct appeal, Movant argued that the Court erred in admitting the Townsend memorandum and that the government used the memorandum improperly. Br. of Appellant Mackey at 35-43. The Eleventh Circuit Court of Appeals affirmed the decision to admit the memorandum and found that the manner in which the government had used the memorandum did not warrant a new trial. Jensen, 573 F. App'x at 871.

Movant asserts that admitting the Townsend memorandum and allowing the government to elicit testimony in regard thereto violated is Fifth and Sixth Amendment rights. (Mov't Mem. at 27-28). Respondent argues that this issue was decided against Movant on direct appeal and that he may not collaterally relitigate the matter. (Resp't Resp. at 55-56).

The Eleventh Circuit Court of Appeals has ruled on this matter, and it is not subject to further review. See Rozier, 701 F.3d at 684.

### 11. Newly Discovered Evidence

At trial, Movant introduced into evidence a letter identifying himself as a victim in a fraud case against Shaw. (Mov't Trial Ex. 22, ECF No. 312-19; Trial Tr. Vol. V at 1305-07, ECF No. 217). At trial, counsel also cross-examined FBI agent Cindy Dugan in regard to Movant being a potential victim in a case involving Benton. (Trial Tr. Vol. IV at 970-71). Additionally, FBI agent Eileen Rice testified that she had received information that Movant had suffered losses related to an investment in a company that the agent was investigating. (Trial Tr. Vol V at 1149, 1153). Further, as discussed by Movant on direct appeal, evidence was presented at trial which showed that he had been a victim who reported fraud in regard to investments with

56

Towerland Limited, Olsen, SEPCO, Eel River, and Shaw.  Br. of Appellant Mackey at 11-12.

On May 30, 2012, Movant filed a motion for a new trial, and on July 3 and 17, 2012, filed additional pleadings in regard thereto.  (Mot. for New Trial, ECF No. 152; Reply to Resp., ECF No. 164; Amended Resp., ECF No. 165).  On August 8, 2012, the Court denied the motion for a new trial.  (Order of Aug. 8, 2012).  On direct appeal, in contesting the use of the summary charts, Movant argued that he was prejudiced by the government's introduction of the email about ACN (which Movant sent to an investor) and asserted that ACN had in fact been endorsed by now President Donald Trump.  Br. of Appellant Mackey at 26.  In affirming the judgment against Movant, the Eleventh Circuit Court of Appeals implicitly found no error in admitting the email about ACN.  Jensen, 573 F. App'x at 877.

Movant asserts that he is entitled to a new trial based on newly discovered evidence:  (1) information on the ACN,[30] (2) the 2009 computer receipt referred to

---

[30]Movant again refers to Exhibit E, the July 2012 copy of the magazine SUCCESS FROM HOME.  (Mov't Ex. E).

57

earlier,[31] (3) the Townsend book,[32] and (4) certain letters addressed to Movant showing that he was a victim of fraud.[33]  (Mov't Mem. at 13-14, 28-29).

Respondent argues (1) that Movant raised the ACN issue on direct appeal and may not collaterally relitigate the matter, (2) that the receipt does not qualify as new evidence of which Movant was unaware, (3) that the Townsend book does not qualify as new evidence, and (4) that the Exhibit C letters are cumulative of matters already before the jury.  (Resp't Resp. at 58-62).

In reply, Movant argues that there is still more evidence being withheld – which includes a document dated 7/28/2010 which states that Movant was always trying to help people and that Movant himself was scammed.  (Mov't Reply at 29 and Ex. H).

––––––––––––––––––––

[31](See Mov't Ex. D).

[32]Movant refers to Exhibit H, but apparently meant to refer to Exhibit G, a copy of Robert Townsend's book LAWYERS' GUIDE:  Advising Clients on High Yield Investment Programs and Ponzi Schemes.  (Mov't Ex. G).

[33]Movant refers to Exhibit C, letters to Movant dated in June 2012 and in 2013 and 2014, which contained information from the U.S. Department of Justice Victim Notification System and pertained to crimes in which Movant had been identified as a victim. (Mov't Ex. C).  The letters reference criminal proceedings against Stanley Anderson, Edwin Smith, and Charles Kennedy and show that, as early as June 8, 2012, Movant was notified that he had been identified as a victim in relation to criminal charges that had been brought against Anderson, Smith, and Kennedy.  (Mov't Ex. C, Letter dated June 8, 2012).

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

United States v. Ramos, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999); see also United States v. Bowe, 426 F. App'x 793, 797 and n.6 (11th Cir. 2011) (stating that entitlement to relief based on newly discovered evidence via either a motion for a new trial or under § 2255 "flows from the same analysis" and requires a showing that the evidence is not merely cumulative or impeaching).

Here, the Eleventh Circuit Court of Appeals already has considered and rejected the information on the endorsement of ACN, and this Court will not review the matter any further. The other issues do not qualify as newly discovered evidence. As discussed earlier, at the time of trial, Movant should have been aware of his own notation on the computer receipt and the Townsend book was available to Movant. Further, in addition to being cumulative of trial evidence that Movant had been a fraud victim, the letters in Movant's Exhibit C show that Movant was aware that he was considered a victim in the case against Anderson, Smith, and Kennedy at the time his motion for a new trial was pending.

59

Additionally, the document dated 7/28/2010, even if not previously available to Movant, is cumulative of trial evidence.  See Bowe, 426 F. App'x at 797 and n.6.

## 12. **Sentence Reduction**

Movant received a four-level enhancement to his sentence under U.S.S.G. § 3B1.1(a), which he challenged on direct appeal.  As stated by the Eleventh Circuit Court of Appeals –

> A district court can impose a 4-level enhancement to a defendant's sentence "if the defendant was an organizer or leader of criminal activity that involved five or more participants *or was otherwise extensive*." U.S.S.G. § 3B1.1(a) (emphasis added). There is more than sufficient support in the record for the district court's finding that [Movant's] criminal activity was "otherwise extensive." The district court did not clearly err in applying this enhancement.

Jensen, 573 F. App'x at 877.

Movant sought a reduction of his sentence under 18 U.S.C. § 3582(c)(2) and Guidelines Amendment 792, and, on August 12, 2016, the Court denied the motion. (Order of Aug. 12, 2016, ECF No. 298).  Movant appealed, and the Eleventh Circuit Court of Appeals determined that a reduction under Amendment 792 and/or 794 and § 3582(c) was unwarranted because neither amendment is listed under U.S.S.G. 1B1.10(d) (governing application of post-sentencing Guideline amendments for motions to reduce sentence under § 3582(c)(2)).  (Order of USCA, ECF No. 313).

60

Movant argues that his sentence should be modified under the April 2015 Guideline clarifying amendments 792 and 794. (Mov't Mem. at 29-30).

Generally, a clarifying Guidelines amendment is retroactive on direct appeal and under § 2255, and a substantive amendment is not. United States v. Jerchower, 631 F.3d 1181, 1184 (11th Cir. 2011) (stating that clarifying amendments, which clarify the Sentencing Commission's originally envisioned application of the guideline, apply retroactively on direct appeal and that substantive changes do not); United States v. Armstrong, 347 F.3d 905, 908 (11th Cir. 2003) ("Our cases have considered applying a clarifying amendment retroactively only in the context of a direct appeal and a 28 U.S.C. § 2255 habeas petition.").

Amendment 792 – amending U.S.S.G. 2B1.1(b)(1)(c) (sophisticated means enhancement) – is a substantive amendment and, therefore, does not apply retroactively. United States v. Alvarado, 643 F. App'x 853, 857-58 (11th Cir.), cert. denied, Orts v. United States, _ U.S. _, 136 S. Ct. 2523 (2016). Amendment 794 – amending the commentary related to minor-role adjustment under U.S.S.G. § 3B1.2 – is a clarifying amendment. United States v. Cruickshank, 837 F.3d 1182, 1193-94 (11th Cir. 2016), cert. denied, _ U.S. _, 137 S. Ct. 1435 (2017). However, "a claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a

non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice." Burke v. United States, 152 F.3d 1329, 1332 (11th Cir. 1998).

Amendment 792 does not apply retroactively, and Movant does not show any fundamental miscarriage of justice based on the amendment 794 clarification to § 3B1.1(a) in light of the fact that the Eleventh Circuit has determined that Movant qualified for an enhancement under § 3B1.2 for his extensive role.

### D.   Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Melton v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484

62

(2000)) (internal quotation marks omitted), <u>cert. denied</u>, _ U.S. _, 136 S. Ct. 324 (2015).

> "When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

<u>Damren v. Florida</u>, 776 F.3d 816, 820 (11th Cir. 2015) (quoting <u>Slack</u>, 529 U.S. at 484), <u>cert. denied</u>, _ U.S. _, 137 S. Ct. 830 (2017).

It is recommended that a COA is unwarranted based on the above discussion of Movant's grounds for relief. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## II.   <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion to vacate, set aside, or correct his federal sentence, as amended [305, 310], and a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

AO 72A
(Rev.8/82)

**IT IS SO RECOMMENDED and DIRECTED**, this 14th day of September, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

64